700 F.2d 1067
 112 L.R.R.M. (BNA) 2928, 97 Lab.Cas. P 10,204
 ANCHOR MOTOR FREIGHT, INC., Plaintiff-Appellant, Cross-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL UNION NO.
377, Defendant-Appellee, Cross-Appellant,
v.
TEAMSTERS FOR A DEMOCRATIC UNION, and Stephen Kindred,
Third-Party Defendants-Appellees.
 Nos. 81-3396, 81-3410.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 11, 1983.
Decided Feb. 25, 1983.
 
 Don H. Pace, (argued), William W. Allport, David R. Knowles, Kris J. Kostolansky, John A. Zangerle, Baker & Hostetler, Cleveland, Ohio, for plaintiff-appellant, cross-appellee.
 Anthony P. Sgambati, II, (argued), Green, Schiavoni, Murphy, Haines, & Sgambati Co., L.P.A., Youngstown, Ohio, for defendant-appellee, cross-appellant.
 Ellis B. Boal, Detroit, Mich., for Teamsters for a Democratic Union.
 Stephen Kindred, pro se.
 Before KENNEDY and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Appellant Anchor Motor Freight, Inc. (Anchor) appeals from a summary judgment dismissing its complaint granted by the Honorable John M. Manos, United States District Judge, Northern District of Ohio. Anchor's complaint alleged that International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 377 (Union) had violated Article 7, Section 2 of the Collective Bargaining Agreement[1] by failing to "immediately make every effort"[2] to persuade its striking members to return to work. Local 377 appeals from the District Court's sua sponte dismissal of its counterclaim for damages (including attorney fees and costs) incurred in defending against appellant's action. Local 377 contends the action was brought in violation of an express term of the Collective Bargaining Agreement providing that Anchor would not bring suit. For the reasons set forth below, we affirm in part and remand for findings not inconsistent with this opinion.
 
 
 2
 Anchor is a contract motor carrier engaged in hauling automobiles. Local 377 represents various Anchor employees for purposes of collective bargaining. A wild cat strike began at Anchor's Lordstown, Ohio facility on June 10, 1979 and continued until June 25, 1979.[3] Anchor filed a complaint in the United States District Court for the Northern District of Ohio on June 11 under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, as amended, alleging that members of Local 377 were engaged in an unauthorized work stoppage and strike. Anchor, with the consent of Local 377, sought and obtained a temporary restraining order from the Honorable William K. Thomas, United States District Judge, Northern District of Ohio, mandating that the wildcat strikers return to work. The strikers failed to comply with the TRO and on June 13 Anchor moved for an order to show cause why they should not be held in contempt. A show cause hearing was held on June 15-16, and an order issued converting the TRO into a preliminary injunction. The strikers again did not comply with the provision of the preliminary injunction and Anchor moved for a second show cause hearing on June 20. Following hearings, Judge Thomas delivered a bench opinion on June 25 finding certain strikers in contempt and imposing fines and imprisonment for their failure to comply with the court's earlier order. Faced with those sanctions, the strikers returned to work. Accordingly, on September 20 Anchor filed a motion to dismiss the action pursuant to Fed.R.Civ.P. 41 on the grounds that changes in circumstances since the court's issuance of the preliminary injunction had rendered all issues moot and that there was no longer any relief for the court to grant. Local 377 consented to the motion and the action was dismissed with prejudice at Anchor's cost on September 28.
 
 
 3
 Anchor then sought to obtain money damages from Local 377 for its failure to have immediately made every effort to end the unlawful work stoppage. Pursuant to Article 7, Section 2(b) of the Agreement, Anchor submitted its grievance to the National Joint Arbitration Committee. A decision was not rendered within thirty days and the matter was considered "deadlocked," thereby allowing Anchor to institute this suit for damages. The instant action was filed on January 8, 1981 and the complaint was amended on January 26, 1981.
 
 
 4
 The District Court held that the prior show cause proceedings were res judicata on the issues raised in Anchor's complaint and granted Local 377's motion for summary judgment. It also held that Local 377 was entitled to summary judgment because there was no evidence that the Union supported, ratified or encouraged the strike. The court further dismissed sua sponte Local 377's counterclaim for costs incurred in defending this action, which the Local contends Anchor filed in violation of its agreement not to sue. Anchor and Local 377 each appeal from the final order of the District Court.
 
 I.
 
 5
 Res judicata bars a claim when (1) the same party or parties in privity with them were present in the prior litigation; (2) a court of competent jurisdiction has entered a valid, final judgment on the merits; and (3) the present action concerns the same subject matter or cause of action as the prior suit. Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9, reh'g denied, 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974); Harrison v. Bloomfield Building Industries, Inc., 435 F.2d 1192 (6th Cir.1970). This Court recently iterated a summary of the related doctrines of res judicata and collateral estoppel as set forth in Montana v. United States, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979).
 
 
 6
 A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...." Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49 [18 S.Ct. 18, 27, 42 L.Ed. 355] (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. [citations omitted] Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1970); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 2-3 (1942); Restatement (Second) of Judgments Sec. 68 (Tent.Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. Southern Pacific R. Co., supra, 168 U.S. at 49, 18 S.Ct. at 27; Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.
 
 
 7
 United States v. Stauffer Chemical Co., 684 F.2d 1174, 1180 (6th Cir.1982).
 
 
 8
 The prior cause of action against the striking union members for violation of their no strike clause differs from the instant cause of action against the Union for violation of its agreement to immediately make every effort to persuade the unauthorized strikers to return to work. Local 377 was, however, entitled to dismissal of a portion of Anchor's claim under the closely related collateral estoppel doctrine on the basis of particularized findings of fact made by Judge Thomas in his bench opinion.
 
 
 9
 The June 17 bench opinion of the District Court held in pertinent part:
 
 
 10
 Before proceeding to discuss and decide these central issues, I desire to make certain findings as to Local 377:
 
 
 11
 The evidence indicates that on June 12, 1979, notices were posted by one or more officers of 377 at the Lordstown Terminal in conspicuous places, and further that by letters and telegrams to union members and committeemen and elected stewards, each of these persons was notified that the work stoppage was unauthorized and in violation of the no strike clause of the collective bargaining agreement.
 
 
 12
 These notices and other communications also gave notice of the temporary restraining order which this Court had issued and in substance the content of it.
 
 
 13
 It is determined that the Local took all available steps to abide by this Court's order and the contract, and to attempt to persuade the members of Local 377 to return to work immediately.
 
 
 14
 Also there is no evidence that Local 377 or the officers either initiated, fostered, or in any way encouraged or supported the work stoppage. Indeed, I should say as an aside, I think the fact they didn't is one of the points that some of the individual defendants make as being in criticism of the actions of 377.
 
 
 15
 Therefore, any request by plaintiff Anchor for a finding of contempt against Local 377 or the officers is expressly denied.
 
 
 16
 App., Vol. 4, Tab 31, 644-45. (emphasis added). Accordingly, Anchor cannot now be heard to claim that the Union failed to immediately make every effort to persuade the strikers to return to work between June 11 (the date the strike began) and June 16 (the last date of the first show cause hearing).
 
 
 17
 There is neither a res judicata nor a collateral estoppel basis for dismissing that portion of Anchor's claim which alleged that the Union had failed to immediately make every effort to persuade the strikers to return to work between June 17 and June 25 when the strike ended. The first show cause hearing was held prior to those dates and the second show cause hearing did not address the question of the Union's action at that time. The court merely examined the activities of individual strikers to determine whether they should have been held in contempt of court.
 
 
 18
 In holding that Local 377 was entitled to summary judgment on the alternative ground that there was no material issue of fact regarding its breach of the Collective Bargaining Agreement, the District Court misapprehended Anchor's claim and failed to consider whether there was evidence of the breach Anchor was asserting. The District Court stated:
 
 
 19
 Absent any evidence that a union instigated, supported, ratified or encouraged an illegal work stoppage the union cannot be held liable for damages. Lakeshore Motor Freight Co. v. Int'l. Bro. of Teamsters, Warehousemen & Helpers of America, Local Union No. 800, 483 F.Supp. 1150 (W.D.Pa.1980). It is clear, therefore, that a union can be held liable for damages due to an unlawful strike only in instances in which it has engaged in some sort of affirmative conduct which supports the unauthorized work stoppage.
 
 
 20
 App., Vol. 1, 15, D.Ct. Op. at (5). Anchor is not alleging that the Union instigated, encouraged, ratified or supported the unauthorized work stoppage. Rather, Anchor contends that the Union breached the Collective Bargaining Agreement when it failed to immediately make every effort to discourage the strikers.
 
 
 21
 Accordingly, we remand to the District Court for a determination of whether there is any issue of fact as to whether the Union immediately made every effort to persuade the strikers to return to work between the dates of June 17 and June 25. Although it is possible for this Court to examine the record in the first instance, there is some question about the admissibility of certain depositions offered by Anchor but apparently not received by the District Court until after it had granted Local 377's motion for summary judgment. Accordingly, the District Court is in a better position to review the extensive record and to make the necessary findings of fact.
 
 II.
 
 22
 Anchor also contends on appeal that the District Court abused its discretion in denying Anchor's Rule 56(f) motion to extend the period of discovery so that Anchor could obtain facts essential to defending against Local 377's motion for summary judgment. This contention is without merit. A review of Anchor's motion and supporting brief reveals that it was not a Rule 56(f) motion. Anchor, for and on behalf of all parties to the action, had simply moved for an extension of the discovery deadline because there were depositions outstanding; there was a possibility of settlement; there were interrogatories outstanding; the matter was complex; Teamsters for a Democratic Union, a third-party defendant, was recently added to the action and needed more discovery time; and the motion for summary judgment had consumed time which the parties would otherwise have spent on normal pretrial discovery efforts.
 
 
 23
 Accordingly, the District Court did not abuse its discretion in denying Anchor's motion.
 
 III.
 
 24
 Local 377 cross-appeals from that portion of the District Court's order which sua sponte dismissed its claim for costs and attorney fees on the ground that the award of attorney fees under the Labor Management Relations Act is discretionary. Local 377 acknowledges that in Alyeska Pipeline Service Company v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court held that, absent statutory authorization, attorney fees are not ordinarily recoverable by prevailing parties in federal litigation. Local 377 further acknowledges that section 301 of the Labor Management Relations Act contains no authorization for the award of attorney fees to the prevailing party in such actions. Local 377 argues, however, that its counterclaim is not within the Alyeska prohibition because it is not incidentally seeking to recover costs and attorney fees, but rather, costs and attorney fees are being used as a measure of the actual damages which Local 377 incurred in defending against the lawsuit which Anchor instituted purportedly in violation of a covenant not to sue contained in the Collective Bargaining Agreement. We agree.
 
 
 25
 In Scott v. Local Union 377, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 548 F.2d 1244, 1266 (6th Cir.), cert. denied, 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977), this Court stated:
 
 
 26
 The Supreme Court in Alyeska reaffirmed the traditional American rule that attorney fees are not ordinarily recoverable by the prevailing litigant in federal litigation in the absence of statutory authorization. We do not read the decision as in any way affecting those cases in which the attorney fees are not an award to the successful litigant in the case at hand, but rather are the subject of the law suit itself. (emphasis added).
 
 
 27
 The Union is not precluded by Alyeska from recovering costs incurred in defending against an action filed in breach of a covenant not to sue. On remand the District Court should decide whether filing of this action was a breach of the Collective Bargaining Agreement.
 
 
 28
 Local 377 vigorously argues that the Collective Bargaining Agreement does not create a cause of action against the Local for its failure to immediately make every effort to persuade the unauthorized strikers to return to work. On remand, the District Court must examine the Collective Bargaining Agreement to determine whether the interpretation advanced by Local 377 has merit.
 
 
 29
 Accordingly, the judgment of the District Court is affirmed in part and the matter is remanded for findings not inconsistent with this opinion.
 
 
 
 [1]
 Although the Collective Bargaining Agreement was only expressly in effect for the period of June 1, 1976 through May 31, 1979, its coverage was extended beyond that time period by the mutual consent of the parties and, therefore, was controlling at the time of the events in question
 
 
 [2]
 At this time we are not interpreting the Union's obligation under this provision of the Collective Bargaining Agreement
 
 
 [3]
 Unless otherwise indicated, all events occurred in 1979