Zobel, J.
Memorandum
Plaintiff is the Trustee of the Hopkinton Crossing Realty Trust (“the Trust”). At the Trust’s creation in 1986, one Charles Farrell, the original Trustee, owned a one-third interest.
In June 1988, the Federal Energy Regulatory Commission issued a Certificate of Public Convenience and Necessity to Defendant, authorizing an eight-mile natural gas pipeline (“the Pipeline”) from Medway to Hopkinton. Defendant then sought to purchase public utility easements from those, including the Trust, owning property along the Pipeline route. On May 26, 1988, Defendant and Farrell, acting for the Trust, executed a Grant of Easement (“the Easement”) and Advance Damage Release (“the Release”). The Easement provided in part that
Grantee [Defendant] agrees to install the pipeline to accommodate construction of the proposed subdivision road and any utilities shown on said plan to cross the easement at no additional cost to the Grantor, provided that said road and utilities are constructed as depicted on the plan . . .
In the Release, the Trust accepted $90,000 as
full payment, settlement and satisfaction for all rights for damages reserved by the undersigned under an easement . . . dated May 26, 1988 and further for all detriment, injuries and damages of whatsoever nature and character to land, stock, timber, crops, fences and growing out of, incident to or in connection with the construction by said company of a certain pipeline or pipelines to be laid on, over or through certain lands . . . more particularly described in the Grant of Easement. . . This Damage Release only applies to land located within the Easement and temporary work space only.
The Release also contains a table of vertical elevations stating the depth at which the Pipeline was to be installed on the Trust’s property. On November 14, 1988, Defendant and Farrell executed an Addendum to Damage Release by which, in exchange for $2,500, *209 the Trust agreed to modify one of the elevations listed in the Release.
While negotiating with the Trust, Defendant sought an easement from the Cliffords, abutters to the Trust’s parcel. Because the parties could not agree on the placement of the Pipeline, Defendant obtained the necessary easement by eminent domain. The Cliffords thereafter attempted to convince Defendant to lower the depth of the Pipeline, because the originally proposed depth would have precluded the Cliffords from developing their subdivision as planned. Once again, the parties could not reach agreement. The Cliffords abandoned the plan.
Defendant completed its installation of the Pipeline on the Trust and Clifford properties, December 3, 1988. The work having damaged ten trees on the Trust’s property, outside the right of way, the parties negotiated a settlement. On January 11, 1989, Defendant and Farrell executed a Damage Release (“the January Release”), giving the Trust $2,500
in full payment, settlement, and satisfaction for all detriment, injuries and damages of whatsoever nature and character to land and timber growing out of, incident to, or in connection with the construction by said companies of a certain 12" pipeline laid, on over or through lands . . . owned by Hopkinton Crossing Realty Trust . . . Said damage having taken place outside of the right of way as described in the grant of easement dated May 26, 1988 . . .
In the January Release, the Trust further agreed to “release, acquit and discharge . . . [Defendant] . . . from any and all claims and detriment, injuries and damages in connection with the construction of said pipeline that may have taken place outside of the right of way prior to January 11, 1989.”
In the spring of 1989, a question having arisen as to whether the Pipeline had been properly sited, the Trust demanded appropriate assurances. Defendant’s engineers joined Kevin O’Leary, an engineer owning a one-third interest in the Trust, in digging test holes and taking elevation readings.
When the parties could not reconcile their results, the Trust demanded that Defendant provide a profile plan, prepared by a registered land surveyor, showing the elevation of the top of the Pipeline throughout the Trust’s property.
Defendant hired Van Hangen Brustlin, Inc. (“VHB”) to prepare the profile plan. To assist VHB with its preparation of the plan, Defendant furnished the readings that Defendant’s engineers had taken earlier. Defendant submitted the VHB report to the Trust which, however, questioned its accuracy of the report, especially its reliance on Defendant’s data. The Trust has continued to demand that Defendant provide an accurate profile plan showing the Pipeline’s exact location.
During its negotiations with Defendant, the Trust sought the Hopkinton Planning Board’s subdivision approval. The Board conditioned its blessing upon the Trust’s constructing a road network connecting with the way crossing the Clifford property. Linking the two would create a direct path through the subdivisions, alleviating congestion on the existing abutting roads.
To build this road, the Trust needed to fill wetlands. Under the Wetlands Protection Act, G.L.c. 131, §40, any person seeking to fill wetlands must file notice with the local conservation commission, which in turn issues an Order of Conditions, detailing the terms regulating or prohibiting the proposed activity. A party aggrieved by a local commission’s decision may petition the state Department of Environmental Protection (“DEP”) for a Superseding Order of Conditions.
In February 1988, the Trust filed a Notice of Intent with the Hopkinton Conservation Commission (“the Commission”), seeking an Order of Conditions to fill about 30,000 square feet of wetlands to construct Prestwick Road. On December 19, 1988, the Commission denied the request, instead issuing an Order of Conditions permitting the Trust to fill only 3,000 square feet of wetlands. A year later, Plaintiff requested a Superseding Order of Conditions from the DEP, which it later abandoned.
1. Defendant’s Motion for Partial Summary Judgment
The complaint includes counts for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) negligence; (4) violation of c. 93A, and (5) trespass, all on one or both of two theories.
The Subdivision Road Theory. The Trust contends that Defendant’s installation of the Pipeline on the Clifford property prevented the Cliffords from constructing their proposed roadway network; and, absent the ability to link-up with the Clifford parcel, the Trust, unable to develop its subdivision as planned, thereby suffered great economic loss. The Trust seeks recovery on all counts except trespass; Defendant maintains that it is entitled to summary judgment.
The Pipeline Elevation Theory. The Trust asserts that once the infeasibility of linkage with the Clifford property became clear, the Trust revised its development plans by converting Prestwick Drive into a culde-sac; Defendant failed to install the Pipeline in accordance with the table of elevations; the Trust consequently incurred additional costs in the development of its revised subdivision. The Trust seeks recovery on all counts; Defendant has moved for summary judgment on all counts except breach of contract.
A. Subdivision Road Claims
Defendant asserts that the individual claims are factually and legally untenable. Alternatively, Defendant argues that it is entitled to summary judgment on the merits.
*210 Defendant maintains that the Trust cannot establish that Defendant’s installation of the Pipeline on the Clifford, property prevented linking Prestwick Drive with a road from the Clifford property. All agree that Prestwick Drive was never built “as depicted” on the subdivision plan. Defendant contends that Prestwick Drive remained in posse because of the Trust’s inability to obtain the necessary approval to build on wetlands. The Trust asserts that eventually it would have received the requisite approval but that the proposal was doomed by Defendant’s installing the pipeline on the Clifford property.
To defeat Defendant’s motion, the Trust must adduce evidence sufficient to establish a “reasonable probability” that it would have eventually obtained the requisite approval, McLaughlin v. Board of Selectmen of Amherst, 422 Mass. 359, 365 (1996). Accordingly, the Trust has submitted three documents:
(1) The Kevin O’Leary Affidavit. O’Leary claims that the Trust would have eventually gained approval for the construction of Prestwick Drive, as originally proposed, even though the Commission rejected the Trust’s proposal. Furthermore, O’Leary maintains that the Trust could have proposed alternative modes for constructing the road over the wetlands which would have met with the approval of the Commission and/or the DEP.
(2) A letter from the Chair of the Hopkinton Planning Board to the Commission Co-chairs. There, the Planning Board informed the Commission of its support for the development of the Trust’s and Clifford’s subdivisions and the need for a linked roadway network through the subdivisions. The Planning Board indicated that it had agreed to several waivers from the Hopkinton Subdivision Rules and Regulations to allow construction of a roadway network with minimal wetlands impact. The Trust considers this letter strongly to adumbrate approval.
(3) The Third Affidavit of Maryann DiPinto. DiPinto, an environmental analyst with the DEP, was assigned in February 1989 to review the Trust’s Request for Superseding Order of Conditions. In an initial affidavit submitted with Defendant’s Motion for Partial Summary Judgment and in a supplemental affidavit, DiP-into had expressed the unlikelihood of her having prepared a Superseding Order of Conditions that allowed the Trust to build Prestwick Drive based on the design submitted with the Trust’s Notice of Intent. In a third affidavit, however, procured by the Trust, DiPinto averred that the position expressed previously was not an opinion on whether the Trust could have obtained approval for a redesigned road; and that in any event, she had expressed herself without any knowledge as to whether the Trust would or had received a variance from the Planning Board.
The net of these submissions is that although the Trust may not ultimately carry its burden at trial, it has submitted sufficient evidence to create a genuine issue of material fact, viz.: Would it have obtained the approval necessary to construct Prestwick Drive over the wetlands?
Next, Defendant asserts that, even if the Trust could demonstrate a reasonable probability of its obtaining the necessary approval, the record demonstrates that the Cliffords could have revised their subdivision plan and built a road that would have linked their property to Prestwick Drive. In his deposition, Gregory Clifford testified that, once it became clear he could not construct his road network as originally planned (because of Defendant’s having installed the Pipeline), he drafted alternative plans. One proposed a road to join Prestwick Drive at a different location than the abutting landowners had originally planned. Clifford testified that he did not go forward with this alternative development plan, in part because the Trust was having difficulty obtaining approval from the Commission for the proposed construction of Prestwick Drive.
The Trust counters that the feasibility of an alternative link-up is not relevant. When the Trust executed the Easement, Clifford intended (and the Trust relied on his ability) to build a road network that would tie into Prestwick Road at a particular location. By installing the Pipeline on the Clifford property as it did, Defendant thwarted the two developers’ ability to pursue their original subdivision plans. The Trust argues that Defendant cannot escape liability by identifying hypothetical alternatives considering the additional cost, labor, and time required to draw up alternative development plans.
In any event, Defendant is not entitled to summary judgment on this ground because, even if an alternative link-up were feasible, that evidence pertains to damages, not liability.
Finally, Defendant maintains that the Trust released all Subdivision Road claims when it executed the January Release, which in plain language remits all claims for damages occurring in connection with the construction of the pipeline occurring outside the right of way before January 11, 1989. The Trust argues that extrinsic evidence of negotiations between the parties demonstrates that the Januaiy Release was intended to apply only to the damages suffered by the ten trees on the Trust’s property. Further, even if the Court construes the Januaiy Release broadly, it is unenforceable because procured by fraud and without adequate consideration.
Generally, the parol evidence rule bars the introduction of extrinsic evidence to contradict the plain language of an integrated release agreement if the terms of the release are unambiguous and the intent of the parties clear from the face of the agreement. Hermes Automation Technology, Inc. v. Hyundai Electrical Industries Co., Ltd., 915 F.2d 739, 747 (1st Cir. 1990); Tapper v. Hancock, 319 Mass. 105, 108 (1946); White Construction Co., Inc. v. Commonwealth, 11 *211 Mass.App.Ct. 640, 644 (1981). However, even when the language of an agreement seems unambiguous, the court may consider extrinsic evidence of the parties’ intent which elucidates, but does not contradict, the purpose of the agreement in light of all the circumstances surrounding its creation, Hubert v. Melrose-Wakefield Hospital Association, 40 Mass.App.Ct. 172, 177 (1996); Cavanagh v. Cavanagh, 33 Mass.App.Ct. 240, 242n (1992).
The January Release does not clearly state the parties’ intent. The Trust accepted $2,500 as full payment and settlement for damage inflicted on land and timber outside the right of way during the construction of the Pipeline; it also agreed to release “any and all claims” for damages occurring outside the right of way prior to January 11, 1989. Defendant argues the generality; the Trust would limit the release to the ten trees. The difficulty with Defendant’s interpretation is that the alleged general release seems to lack any consideration, whereas the $2,500 explicitly pertains to land and timber damages. It is an issue for the fact finder whether the Trust would release a universe of potential claims for only $2,500.
i. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
Defendant argues that the claims for breach of the express and implied terms of the Easement are legally insufficient because the Easement cannot be construed as Defendant’s promise to construct the Pipeline on the Clifford property so as to enable the Cliffords- to build a road connecting with Prestwick Drive. However, the law of the case is that the Easement restricted Defendant as to its installation of the Pipeline on Clifford property.
Defendant also argues that the breach of contract claim fails because the Trust cannot show that Defendant’s alleged breach caused economic damage. Here again, Defendant is not entitled to summary judgment on this theory: genuine disputes of material fact exist as to the Trust’s obtaining approval to construct Prestwick Drive over the wetlands.
As to negligence, Defendant is entitled to summary judgment because any duty arose only by virtue of the Easement, and is barred by the “economic loss" rule. When economic loss is the only claimed damage, negligence does not support recovery. Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989). It is undisputed that Defendant’s installation of the Pipeline on the Clifford land did not physically damage the Trust’s property. The Trust merely alleges that Defendant’s conduct prevented its building Prestwick Drive so as to develop the subdivision in the most profitable way. These are economic damages.
A claim for breach of contract and/or breach of the implied covenant of good faith and fair dealing implicates Chapter 93A. Moreover, for present purposes, the action is timely, G.L.c. 260, §5A. Although the Trust submitted a demand letter, G.L.c. 93A, §9(3), in August 1989, and the instant suit was not filed until November 1994, the letter only complainedi of Defendant’s actions on the Trust’s property, not the Cliffords’. The material triable issue, viz., when did the Trust know, or when should it have known, of Defendant’s conduct on the Clifford property, precludes summary judgment.
B. Pipeline Elevation Claims
The only issue is whether Defendant did or did not install the pipeline in accordance with the Easement and ADR. A claim for breach of the implied covenant of good faith and fair dealing rests on acts of one party which, although not expressly prohibited by the agreement, destroy or injure the other party’s right to enjoy the fruits of the contract. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-72 (1991). Here, one finds no allegations that Defendant took any action which, although not rising to the level of a breach of the express terms of the Easement, amounted to interference with the Trust’s rights.
On the negligence claim, Defendant recycles the same arguments that it used with regard to the Subdivision Road negligence claim, namely that it owed the Trust no duly, and that the economic loss rule and the statute of limitations bar the Trust. In response, the Trust argues that, aside from the obligations imposed by the Easement, Defendant owed a duty to refrain from physically damaging the property, a duty supposedly breached when it “devastated” a considerable tract of wetlands during the Pipeline’s installation.
This claim for physical damage to its property fails because the action was not commenced within three years, G.L.c. 260, §2A, after the Trust knew of the physical damage to its property, knowledge which it possessed as early as Januaiy 1989, almost six years before this action commenced.
Although the Trust’s Chapter 93A demand letter preceded suit by more than five years, the allegations and (at this point) evidence that Defendant engaged in a continuous pattern of deceptive conduct with regard to its installation of the Pipeline on the Trust’s property save Plaintiff, at least for now.
Defendant asserts several bases for summary judgment as to trespass:
First, that the claim is superfluous because any harm for mislocation of the Pipeline will be compensated by contract damages. However, part of the relief which the Trust seeks is an injunction ordering Defendant to move the Pipeline. Such relief is not available under the contract.
Second, that the applicable statute of limitations, G.L.c. 260, §2A, bars recoveiy. However, mislocation of the Pipeline would constitute a continuous tres *212 pass, see Silverleib v. Hebshie, 33 Mass.App.Ct. 911, 913 (1992) (rescript). The action was timely brought.
Finally, Defendant claims that the trespass claim fails because this Court cannot grant the Trust the injunctive relief it has requested, namely that Defendant' be ordered to move the Pipeline, without an impermissible collateral attack on FERC’s issuance of the Certificate of Public Necessity.
It is true that a landowner burdened by an easement obtained pursuant to a Certificate of Public Necessity may not question FERC’s decision to grant the certificate or the implementation of the certificate by the utility, see Schmoeger v. Algonquin Gas Transmission Co., 802 F.Supp. 1084, 1085 (S.D.N.Y. 1992). This principle, however, does not bar a landowner from pursuing a state law remedy based on the utility’s having exceeded the scope of its authority under the certificate. “It would be ‘difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct,’ ” id. at 1086; see also Pacific Gas Transmission Co. v. Richardson’s Recreational Ranch, Ltd., 9 F.3d 1394, 1396 (9th Cir. 1993).
Here, the Trust alleges that by installing the Pipeline in the incoiTect location, Defendant exceeded the scope of the powers granted by the Certificate and the Easement. A court order compelling Defendant to move the Pipeline to comply with the Certificate is not a collateral attack on the Certificate of Public Necessity.
Although the parties have filed cross motions for summary judgment with respect to the counterclaims, neither party is entitled to prevail. Both concede the existence of a dispute as to the propriety of the Pipeline’s location and the extent to which it was misplaced. Both agree that conclusive evidence on this issue must await complete exposure of the Pipeline and determination of the pertinent elevations. Pending resolution, the Court cannot definitively rule on Defendant’s fulfilling its obligations under the agreements. Thus the Trust’s claims are not, as a matter of law, barred by the releases contained in the Easement and ADR.
Defendant moves to amend its Counterclaim by adding a claim for actual damages (legal fees and costs associated with defending this lawsuit) caused by the Trust’s breach of the covenants not to sue. Defendant did not originally include such a claim in the Counterclaim because it did not think such damages recoverable. Subsequent to filing the Counterclaim, Defendant “discovered” Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters, 700 F.2d 1067, 1072 (6th Cir. 1983), allowing as actual damages attorneys fees and costs incurred while defending a lawsuit violative of a covenant not to sue. No Massachusetts cases appear to address the issue.
Defendant argues that the amendment should be allowed under the prevailing liberal principles, Mass.R.Civ.P. 15(a): the Trust will suffer no prejudice as a result of the amendment because the case is not on the eve of trial, Defendant is not asserting any new theory of liability, and no new discovery will be necessary.
The amendment is appropriate.
ORDER
Accordingly, it is Ordered, that Defendant’s Motion for Partial Summary Judgment be, and the same hereby is, Allowed as to any claim for negligence, and in all other respects, Denied.