**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-1297 & 23-1349
_____

WHITE WINSTON SELECT ASSET FUNDS, LLC;
GT ACQUISITION GROUP, INC.,
                              Appellants/Cross-Appellees

v.

GOOD TIMES RESTAURANTS, INC.
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-19-cv-02092)
*Circuit Judge*, sitting by designation:  Hon. Stephanos Bibas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 2, 2024

Before: CHAGARES, *Chief Judge*, RESTREPO, and FREEMAN, *Circuit Judges*

(Filed:  March 1, 2024)
_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

A non-binding agreement to negotiate is not a binding agreement to close a deal. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009).[1]  When negotiating parties cannot agree and a deal falls apart, they may be disappointed, but there is no breach of contract.  That is what happened here.

Appellants White Winston Select Asset Funds, LLC and GT Acquisition Group (collectively "White Winston") appeals the District Court's post-trial decision finding that Appellee Good Times Restaurants, Inc. ("Good Times") did not breach an implied duty to negotiate in good faith under a preliminary agreement.  Good Times cross-appeals the District Court's grant of summary judgment to White Winston on its counterclaim alleging that White Winston breached its agreement not to sue.  Because we find that Good Times did not act in bad faith and that White Winston negotiated away its right to sue, we affirm in part and reverse in part.

I.[2]

On February 11, 2019, White Winston and Good Times signed a non-binding letter of intent to negotiate the sale of Good Times' restaurant chain, Drive Thru.  On April 29,

---

[1] In *American Eagle Outfitters*, we applied Pennsylvania law, explaining that "preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract."  584 F.3d at 582 (quoting *Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986)).  Delaware law follows the same principle. *See, e.g.*, *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 761 (Del. 2022) (explaining that some preliminary agreements may be binding, but where a number of material terms are left open, the agreement binds the parties only to negotiate in good faith, not to reach a final agreement).

[2] As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows.

2019, after some negotiation, they signed an amended letter of intent ("LOI") that proposed a sale price of approximately $9 million.

The LOI deemed only certain paragraphs to be binding, two of which are at issue here: Paragraphs 7 and 8. Paragraph 7 required Good Times to deal exclusively with White Winston. Paragraph 8 expressly provided that the LOI was "not binding upon any person and ha[d] no legal effect whatsoever." J.A. 5218–19. Because of Paragraph 8, the LOI did not require the parties to close the deal or give the parties "any rights or claims" if they chose to terminate negotiations, unless there was a breach of Paragraph 7. J.A. 5219. Good Times, in effect, "kill[ed] the deal" when it demanded a $2 million price increase. *White Winston Select Asset Funds, LLC v. Good Times Rests., Inc.*, No. 19-cv-2092, 2023 WL 387582, at *6 (D. Del. Jan. 25, 2023).

White Winston sued, alleging that Good Times breached the covenant of good faith and fair dealing implied in its negotiations. Good Times counterclaimed that White Winston's lawsuit is barred by Paragraph 8 and sought damages in the form of attorneys' fees. J.A. 5218–19.

The District Court entered summary judgment for White Winston on Good Times' counterclaim, finding that the LOI expressly allowed White Winston to sue for breach of the exclusive dealings clause. The District Court also allowed White Winston to proceed to trial to determine whether Good Times acted in bad faith when it increased its asking price. Following a bench trial, the District Court held that Good Times did not breach an implied obligation to negotiate in good faith.

3

White Winston filed a timely appeal, challenging the District Court's post-trial judgment. Good Times cross-appealed, challenging the District Court's decision to allow White Winston's lawsuit to proceed, seeking damages and attorney's fees. We address each in turn.

## II.[3]

We exercise plenary review over the District Court's legal conclusions following a bench trial. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006). The District Court's interpretation of a contract is a question of law that is subject to plenary review. *Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 47 F.4th 225, 228 (3d Cir. 2022). We will not set aside the District Court's findings of fact unless they are clearly erroneous. *Colliers Lanard*, 458 F.3d at 236. White Winston argues that the District Court erred in finding Good Times did not act in bad faith by terminating negotiations with its increased price demand, and that this termination violated Paragraph 7's exclusive dealings requirement.

## A.

The District Court correctly found that Good Times did not breach Paragraph 7, where it agreed to "deal exclusively with White Winston" during negotiations. J.A. 5218. Good Times complied with this obligation because it negotiated exclusively with White Winston until the deal fell through, and it did not terminate the deal in order to find another buyer.

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1). We have appellate jurisdiction under 28 U.S.C. § 1291.

The District Court rightly determined that Paragraph 7 prohibited Good Times from "sabotag[ing] discussions to find a new buyer," meaning Good Times could not lie about its intention to sell or "pretend[] to negotiate while really intending to call off negotiations to look for a new buyer." *White Winston*, 2023 WL 387582, at *7. The implied covenant of good faith merely requires parties "'to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985)). The parties' bargain required exclusivity; it did not require Good Times to close the deal. Because Good Times communicated its position as it changed and made an honest, though significantly higher demand, it did not act arbitrarily or unreasonably.

B.

The District Court also correctly found that Good Times did not act in bad faith. Under Delaware law, parties to a contract are subject to an implied covenant of good faith and fair dealing. *Dunlap*, 878 A.2d at 441–42. We need not decide whether the implied covenant of good faith applies to the LOI because we agree with the District Court's finding that Good Times did not act in bad faith. Rather, Good Times simply terminated the deal by demanding a higher price.

White Winston argues that the implied covenant of good faith requires a "sound justification" to increase the price. Appellants Br. at 29. But that is inconsistent with Paragraph 8, which allowed "any party *for any reason* [to] terminate[] negotiations" without legal consequence, so long as the termination was not the result of a breach of the

5

exclusivity clause. J.A. 5218–19 (emphasis added). Requiring this justification would read into the contract more than what the parties bargained for. Such a reading would be inconsistent with Delaware law and would allow the implied covenant of good faith and fair dealing to circumvent the parties' agreed upon terms. *See Dunlap*, 878 A.2d at 441. We therefore affirm the District Court's post-trial finding in Good Times's favor.[4]

### III.

In its cross-appeal, Good Times argues that the District Court wrongly granted summary judgment in favor of White Winston on Good Times's counterclaim regarding White Winston's breach of its agreement not to sue. We review a District Court's grant of summary judgment de novo. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 198 (3d Cir. 2022).

According to Good Times, White Winston negotiated away its right to sue for termination of the negotiations. We agree.

Paragraph 8 states:

Neither this letter nor any party's execution thereof shall . . . give any party any rights or claims against another in the event any party for any reason terminates negotiations to effect the Acquisition, other than in respect of claimed breaches of paragraphs 7, 8, 9, 10 and 11 hereof.

J.A. 5219. This section is binding.

---

[4] White Winston also appeals the District Court's determination that White Winston was limited to reliance damages. Because there was no breach and White Winston is not entitled to damages, this issue is moot. In addition, White Winston appeals the District Court's decision not to sanction Good Times for failing to produce Drive Thru's sales figures during discovery. The District Court found this failure to produce harmless because, under the terms of the agreement, Good Times did not need to justify its demand increase. We agree and need not address the issue further. *See* Fed. R. Civ. P. 37(c)(1).

Delaware law allows a party to covenant away its right to sue. *New Enterprise Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 535–36 (Del. Ch. 2023) ("Covenants not to sue are generally valid . . . ."). We interpret the terms of a covenant not to sue like any other contract terms, *id.*, and look to the language of the contract to determine the parties' intent, *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003).

With a few stated exceptions, White Winston agreed not to bring any claims against Good Times should it terminate negotiations. The parties intended to be bound by that agreement, and both reaped a benefit: protection from suit and the expense of litigation if negotiations fell through. White Winston argues that Paragraph 8 is merely a "disclaimer" that the LOI does not give any party any rights or claims, except for claimed breaches of Paragraph 7 and the other binding paragraphs. Appellants Reply Br. at 43. According to White Winston, the language in Paragraph 8 "might create a contractual defense," but it does not covenant away any right to sue. *Id.* But if the contract does not give the parties any rights or claims, a contractual defense would be superfluous. We will not interpret language in a contract to render provisions superfluous. *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 167 (3d Cir. 2011). Thus, neither party had the right to sue except under one of the exceptions, and both parties were protected from suit in the event they decided to walk away from the deal. That is what the parties negotiated and agreed to. White Winston breached that promise.

The District Court concluded that White Winston was entitled to sue because "Paragraph 7 form[ed] the basis of White Winston's suit." *White Winston Select Asset*

*Funds, LLC v. Good Times Rests., Inc.*, No. 1:19-cv-2092, 2022 WL 13976042, at \*3 (D. Del. May 5, 2022). White Winston's claims, however, do not rest on Paragraph 7's exclusive dealings clause. Rather, they rest on the *implied* covenant of good faith and fair dealing. Because this was not an exception listed in Paragraph 8, and Good Times should never have been forced to defend itself in this litigation, we hold that White Winston breached its agreement not to sue.

B.

Good Times seeks damages for the expenses it incurred as a result of this litigation. White Winston breached its promise not to sue, which caused Good Times harm in the form of litigation expenses. Because we find this harm was the direct consequence of White Winston's breach, we reverse and remand to the District Court to assess damages.

In assessing damages for a breach of contract, "the non-breaching party is entitled to recover 'damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made.'" *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264–65 (Del. 1995)). Delaware follows the "American Rule," which requires litigants to pay their own attorneys' fees, but it recognizes "two general categories of exceptions." *Brice v. State, Dep't of Correction*, 704 A.2d 1176, 1178 (Del. 1998). The first category involves fee-shifting when allowed by statute. *Id.* The second "involves the invocation [of] one of several equitable principles that have been recognized by the judiciary as a matter of common law." *Id*. Because there is no Delaware fee-shifting statute, we consider whether attorneys' fees are recoverable under common law equitable principles. *Id*. Neither White

8

Winston nor Good Times point to Delaware authority that allows for or prohibits recovery of attorneys' fees for breach of a covenant to sue under these equitable exceptions.[5]

Delaware law has not expressly determined whether attorneys' fees for breach of a covenant not to sue would fall under the exceptions to the "American Rule," but other courts have allowed such recovery. *See, e.g.*, *Princeton Digit. Image Corp. v. Office Depot, Inc.*, 2017 WL 10765194, at *6 (D. Del. Aug. 1, 2017) (applying New Jersey law to allow recovery of fees incurred from defending against suit brought in violation of covenant not to sue); *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897, 901–02 (D.N.J. 1991) ("[A]ttorneys fees are a proper element of damages when the right violated is the right to be free from suit."); *Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters*, 700 F.2d 1067, 1072 (6th Cir. 1983) (allowing recovery of "costs incurred in defending against an action filed in breach of a covenant not to sue"); *Bolton v. McKinney*, 855 S.E.2d 853, 857 (Va. 2021) (recognizing parties are entitled to recover attorney's fees for breach of covenant not to sue). "Allowing damages in this circumstance compensates the injured party for its loss and puts it back in the same position in which it would have been had the other party adhered to its promise." *Bolton*, 855 S.E.2d at 857.

---

[5] Equitable exceptions recognized by Delaware courts include the common fund doctrine, which allows groups (like plaintiffs in a class action suit) who profit from litigation to share in its costs, *Goodrich v. E.F. Hutton Grp.*, 681 A.2d 1039, 1044 (Del. 1996); and the "bad faith" exception, which allows for fee shifting when a party has, for example, "unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims," *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) (quoting *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998)). "The bad faith exception is applied in 'extraordinary circumstances' as a tool to deter abusive litigation and to protect the integrity of the judicial process." *Id.*

When one party breaks a promise not to initiate litigation, the other party suffers the cost of litigation and should be entitled to compensation. *See Anchor Motor Freight*, 700 F.2d at 1072; *Riveredge Assocs.*, 774 F. Supp. at 901–02. Because Good Times's harm resulted from White Winston's initiation of a wrongful suit and Good Times should never have had to defend itself in this case, Good Times is entitled to recover damages it incurred because of White Winston's breach of its promise not to sue. We therefore reverse the District Court's grant of summary judgment for White Winston on Good Times's counterclaim and remand for determination of damages.

## IV.

For the foregoing reasons, we affirm in part and reverse in part.