**Alf LARSEN, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

**No. 20520.**

United States Court of Appeals
Ninth Circuit.

May 23, 1966.

Seth W. Morrison, Allen, DeGarmo & Leedy, Seattle, Wash., for appellant.

Gordon W. Moss, Lane, Powell, Moss & Miller, Seattle, Wash., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge:

This diversity case raises questions of liability of an insurer for loss of cargo due to the alleged negligence of the crew of the carrier in care and refrigeration of the cargo. The cargo consisted of twenty-one tierces (large barrels) of mild-cured salmon, shipped aboard the Aleutian Reefer from Alaska to Seattle on July 10, 1964. Upon arrival in Seattle two months later, eleven of the tierces were found to be total losses due to their soured condition. The District Court entered summary judgment in favor of appellee upon the ground that the loss was not covered by the two applicable standard cargo policy clauses: (1) the so-called "Inchmaree" perils clause,[1] and (2) the Average warranty.[2] Upon this appeal appellant contends that the District Court has not correctly interpreted those clauses.

1. As to the Inchmaree clause, appellant contends that the District Court erroneously gave a narrow and inappropriate construction to the phrase "navigation or management of the vessel" in excluding acts of negligence in the care of cargo. The court relied on the established construction of this phrase as used in the Harter Act, 27 Stat. 445 (1893), 46 U.S.C., § 192 (1964), and the Carriage of Goods By Sea Act, 49 Stat. 1207 (1936), 46 U.S.C., § 1304(2) (a) (1964). Appellant asserts that the special purpose of those Acts renders any construction of the language in question as used there inappropriate in an insurance context such as we face here. We disagree.

By construction of this phrase as used in the noted sections of the Harter Act and COGSA, the shipowner is relieved from liability for loss due to negligence in the operation of the vessel itself, but retains liability for negligence in the care of the cargo. This division of responsibility and liability has resulted in differing limits of coverage in standard marine policies. The standard hull policy form of Inchmaree clause insures against negligence of the crew without limitation, while the standard cargo form (as in this case) is limited to provide coverage only for loss due to acts of negligence for which recovery from the ship cannot be had and as to which the shipper otherwise would be without indemnity.

We conclude that this phrase when used in policies of marine insurance must be given the same construction as is given under the Harter Act and COGSA and that the District Court was correct in so construing it.

2. As to the Average warranty, appellant concedes that the phrase "warranted free from Particular Average" eliminates liability for partial loss of cargo. It contends, however, that each of the eleven lost tierces should be regarded as a separately insured and apportionable package as to each of which there was total loss. The District Court ruled that from the declaration of goods and the policy itself "it seems clear that the twenty-one tierces of salmon were included as a single unapportionable shipping package and that the eleven tierces do not constitute an apportionable part of

---

1. "This insurance is also specially to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots."

2. "Warranted free from Particular Average unless directly caused by the vessel being stranded, sunk, burnt or in collision with another ship or vessel or with ice or with any substance other than Water. Not-withstanding this warranty, the Assurers are to pay the insured value of any package or packages which may be totally lost in loading, transhipment or discharge; also to pay landing, warehousing and special charges if incurred for which Underwriters would be liable under a policy covering Particular Average.

Whilst stowed in Refrigeration Chambers of vessel named herein this insurance is extended to cover all loss or damage due to or caused by derangement or breakdown of the refrigerating machinery and/or refrigerating plant and/or insulation. * * * *"

this package within the authorities." We agree.

 Appellant also contends as to this warranty that this loss falls within the exception provided in the case of "derangement" of refrigerating machinery. The District Court ruled that to be deranged "machinery must have some functional disorder in its own operation as distinguished from a simple failure to operate at all, or an operation at an improper or insufficient rate of production or operation due solely to the manner in which human beings in charge of the same choose to operate or not to operate it." There being no evidence of mechanical derangement, it held the exemption not to apply. We agree.

Other assignments of error we find to be without substance for the reasons given by the District Court.

Judgment affirmed.