John DeROSE t/a Super Fishall, Inc., Plaintiff,

v.

ALBANY INSURANCE COMPANY, et al., Defendants.

Civ. No. 91–4288 (GEB).

United States District Court, D. New Jersey.

June 17, 1992.

Edward F. Kenny, Bigham Englar Jones & Houston, Newark, N.J., for defendants Albany Ins. Co., Talbot Bird & Co., Inc., and GRE Corp.

A. Kenneth Weiner, East Brunswick, N.J., for plaintiff.

## MEMORANDUM AND ORDER

BROWN, District Judge.

This matter comes before the Court on motion by the defendants for summary judgment. For the following reasons, defendants' motion is granted and plaintiff's complaint will be dismissed in its entirety.[1]

## FACTUAL BACKGROUND

The following material facts are undisputed. Defendant, the Albany Insurance Company ("Albany"), issued a named perils policy of hull, protection and indemnity insurance with endorsements and warranties, number 8H20921, for the vessel Spray III and Super Fishall, Inc., for the period May 16, 1990 to May 16, 1991. That policy of insurance contained a machinery endorsement which provided:

> Warranted not liable for loss or damage to machinery and appurtenances unless directly caused by stranding, sinking, fire or collision with another vessel, except to the propeller and propeller shaft.

Kenny Aff., Ex. 2. Thus, damage to the vessel's machinery or appurtenances is not covered under the policy unless it is caused by stranding, sinking, fire or collision with another vessel.

On or about May 15, 1991, the vessel Spray III, while engaged in fishing in the Atlantic Ocean off the coast of Belmar, New Jersey, sprung a leak in her forward compartments. Thereafter, the vessel took on water up to a level located approximately mid-way up the engine block in the en-

gine compartment. The lazarette compartment situated aft remained intact and watertight, keeping the vessel afloat. Plaintiff was able to raise the anchor, start the engine, and bring her to a position some 200–300 yards off Bay Head.

There, the United States Coast Guard responded and using portable pumps commenced pumping water from the vessel. After the ingress of water was stabilized, Sea Tow, a private company, towed the vessel to Belmar Marine Basin where she was tied afloat alongside the dock. Subsequently, the vessel was towed to Yank's Boat Yard and hauled. The vessel was placed in storage where she remains today.

Plaintiff sued in Superior Court, under the above policy, alleging that the vessel struck a submerged object, resulting in partial submersion and substantial property damage. Defendants thereafter removed the action to this Court based upon diversity of citizenship. *See* 28 U.S.C. § 1441(a).

## DISCUSSION

Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party receives the benefit of all reasonable doubts and any inferences drawn from the underlying facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Fed.R.Civ.P. 56(e) also requires that when a nonmoving party bears the burden of proof at trial as to a dispositive issue, that party is required to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. For an issue of fact to be genuine, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material

---

1. Although defendants technically moved for only partial summary judgment, during oral argument the parties agreed that liability on Count I of plaintiff's complaint was dispositive on all counts.

facts. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56. Issues of material fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A nonmoving party may not rely on allegations without factual support. *See Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

■ In support of their motion, defendants argue that the vessel did not "sink" as that term is used in the insurance policy.[2] Plaintiff does not dispute that the vessel did not "sink," but rather claims that it was "sinking" when the damage occurred.

The policy does not define the term "sinking." Instead, defendants rely on the definition of sink contained in Webster's Dictionary, various authorities on marine insurance who have defined that term, and several cases dealing with the issue. Webster's Dictionary defines the term "sink" as:

1a: to become submerged: to go to the bottom

1b: to become partly buried or submerged (as in mud)

1c: to descend into or become engulfed by the earth.

*Webster's Third New International Dictionary* 2125 (1976). Various authorities on the subject agree that a ship is not sunk unless she physically sinks or has sunk as far as possible. *See, e.g.,* Victor Dover, *A Handbook to Marine Insurance* 246 (1929) ("if a vessel can become still further immersed, she is not a sunken vessel"); 2 Alex L. Parks, *The Law and Practice of Marine Insurance and Average* 803–04 (1987) ("A ship is not sunk within the meaning of the memorandum unless she physically sinks.").

Although defendants rely on the English case of *Bryant & May Ltd. v. London Assur. Corp.,* 2 T.L.R. 591 (1886), we find that case inapposite. The issue of whether the vessel had sunk within the meaning of

an insurance policy, which "warranted free from particular average unless the ship were ... sunk," *id.* at 591, was not decided by the court on a motion for summary judgment, but rather was submitted to the jury. *See id.* at 592.

Defendants cite *Snare & Triest Co. v. Fireman's Fund Ins. Co.,* 261 F. 777 (2d Cir.1919), and *Larsen v. Insurance Co. of North America,* 252 F.Supp. 458 (W.D.Wash.1965), *aff'd,* 362 F.2d 261 (9th Cir.1966), in support of their position that the vessel here did not sink as that term is used in the policy. In *Snare,* a barge filled and sank "decks to" and "could sink no farther." It later turned upside down. The policy of insurance under which plaintiffs sought coverage covered only damage caused by "stranding, sinking, burning or collision." The court found that the claimed loss resulted from capsizing and was not caused by sinking or water-logging.

In *Larsen,* the court found there was not a sinking within the purview of an insurance clause which covered against loss caused by a vessel being stranded, sunk or burnt. 252 F.Supp. at 472. The court held:

The word "sink" is defined by the Oxford Dictionary in its primary meaning, to mean "To become submerged in water; to go under or to the bottom (of ships); to founder." This is in line with the authorities available on this subject which hold that to be "sunk" or to come within the term "sunk" the vessel (or at least a steel vessel such as is here involved, as opposed to a barge so constructed out of wood or other buoyant material as to be incapable of being entirely submerged) *must be sunk as far as it could sink under the surface of the water,* and not just lying a little lower in the water than normal either from shipping water through leaks or otherwise, or from a heavier load or ballast. Common sense requires something more than a mere shipping of 30 inches of water in the hold causing a ship to lay a little lower in the water than it otherwise would, but without touching bottom, but without touching bot-

tom, to constitute a sinking, else the possibility of collecting insurance under this type of clause would be even greater than the perils ordinarily insured without the FPA limitation. Obviously, there was no "sinking" in this case.

*Id.* (footnote omitted) (emphasis added).

Here, it is undisputed that the Spray III did not "go to the bottom," and it is further undisputed that the vessel would have sunk further down in the water had the winds not diminished. DeRose Dep. 12/5/91, at 99, 176. Thus, it is undisputed that the vessel did not sink as far as she could sink under the surface of the water. Plaintiff has offered no evidence to the contrary. In fact, it is undisputed that the lazarette compartment situated aft remained intact and watertight and kept the vessel afloat.

Plaintiff's attempt to distinguish *Larsen* on the basis that the insurance clause at issue there involved the term "sunk" as opposed to the term "sinking" is unpersuasive. Although *Larsen* involved an insurance clause which covered against loss caused by a vessel being "sunk," the court specifically noted: "Common sense requires something more than a mere shipping of 30 inches of water in the hold causing a ship to lay a little lower in the water than it otherwise would, but without touching bottom, to constitute a *sinking.*" 252 F.Supp. at 472 (emphasis added).

The undisputed facts here show that the Spray III was taking on water or flooding. Indeed, plaintiff told Boatswain's Mate Moen, coxswain of the Coast Guard Cutter, that he was 15–20 nautical miles off shore in rough seas when the vessel began "taking on water." Kenny Aff., Ex. 5. In addition, the Situation Report included in the Coast Guard Incident Report indicates that the vessel was "taking on water" and the Coast Guard commenced dewatering and stabilized the flooding. Kenny Aff., Ex. 4.

Plaintiff's attempt to distinguish *Larsen* on the basis that the vessel there was not threatened with total submersion as was the Spray III also is unfounded. The court in *Larsen* simply held that a vessel must be sunk as far as it could sink to come within the meaning of the insurance policy. Here, plaintiff's complaint alleges only that the vessel "struck a submerged object resulting in a *partial submersion.*" Complaint ¶ 4 (emphasis added). The deposition testimony of plaintiff also demonstrates that the boat did not sink. Plaintiff testified that "[t]he front compartment was filled. It was over the bow, the second compartment was filled entirely, the third compartment was filled entirely, and half the engine room was filled, and the only thing that kept the boat afloat was the lazarette compartment." DeRose Dep. at 99. Plaintiff further stated that neither the wheelhouse nor the pilothouse was under water. *Id.* at 99–100.

Plaintiff in effect argues that the phrase "directly caused by ... sinking" should be read to mean caused by the process of sinking, even if incomplete and abated. This construction is unpersuasive and is contrary both to prior usage of the term "sinking" in maritime insurance and to a common sense reading of the term in context. Moreover, even under plaintiff's construction he would not prevail, for the undisputed facts disclose that the Spray III was not "sinking." For plaintiff to prevail, one must read the policy to cover flooding or taking on water where there was a substantial likelihood that the vessel would sink unless actions were taken by the crew or others or the water abated. The policy cannot conceivably be so read. Here, plaintiff's argument is in effect that the vessel would have sunk but for: (1) the fact that the wind abated; (2) the crew raised the anchor, started the engines, brought the vessel some 15 miles closer to shore; (3) the Coast Guard's pumps worked; and (4) the lazarette compartment remained watertight keeping the vessel afloat throughout. Could not one or more of the above factors be said of any serious leak? The damage complained of here was not caused by the vessel "sinking" under any reasonable construction of the policy.

For the foregoing reasons, this Court must conclude as a matter of law based on the undisputed facts that there was no loss or damage "directly caused by ... sinking"

within the meaning of the policy, and thus, defendants' motion for summary judgment is granted.

It is therefore on this 17th day of June, 1992,

ORDERED that defendants' motion for summary judgment be and is hereby GRANTED; and it is

. FURTHER ORDERED that plaintiff's complaint be and is hereby DISMISSED in its entirety.