SUMA FRUIT INTERNATIONAL,
a corporation, Plaintiff–
Appellant,

v.

ALBANY INSURANCE COMPANY, a
corporation, Defendant–Appellee.

No. 96–15774.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1997.

Decided July 31, 1997.

R. Scott Erlewine and Kelly J. Snowden, Goldstein & Phillips, San Francisco, CA, for plaintiff–appellant.

Jess B. Millikan and Daniel K. Janisch, Derby, Cook, Quniby & Tweedt, San Francisco, CA, for defendant–appellee.

Before: SCHROEDER and
KLEINFELD, Circuit Judges, and
WALLACH, Court of International Trade
Judge.*

SCHROEDER, Circuit Judge:

Suma Fruit International ("Suma") appeals the district court's summary judgment for Albany Insurance Company ("Albany") in Suma's diversity action for breach of an insurance contract.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo, *see Commodities Reserve Co. v. St. Paul Fire & Marine Ins. Co.*, 879 F.2d 640, 642 (9th Cir.1989), and we affirm.

In August 1994, Albany issued an open marine cargo insurance policy that contained, among other things, a perishable cargo clause to insure Suma against the risk of physical loss or damage to its shipments of perishable goods. The clause, however, did not insure Suma against the deterioration or decay of its goods, absent a showing that the damage was caused by a "derangement or breakdown of the refrigeration equipment...."[2]

In December 1994, Suma shipped over 17,000 cartons of sweet onions by sea from Uruguay to the United States. The shipment arrived in January 1995, but a portion of Suma's cargo had deteriorated while in transit. After inspecting the cargo, Suma surmised that the onions had decayed because its carrier had failed to set the fresh air vents correctly on the refrigeration units of the storage containers. Suma subsequently filed a claim with Albany to recover its losses. Albany rejected the claim, stating that the failure of Suma's carrier to set the fresh air vents correctly did not constitute a "derangement" of the refrigeration equipment.

---

* The Honorable Evan J. Wallach, judge of the United States Court of International Trade, sitting by designation.

1. Suma, a California corporation with its principal place of business in California, is a packer and supplier of perishable fruits and vegetables. Albany is a New York corporation with its principal place of business in New York.

2. The perishable cargo clause insured Suma against:

On July 20, 1995, Suma filed this action, seeking damages and declaratory relief and alleging that Albany had breached its insurance contract and the covenant of good faith and fair dealing. Following Albany's answer, both parties moved for summary judgment. The district court entered judgment for Albany after it applied our decision in *Larsen v. Insurance Co. of N. Am.*, 362 F.2d 261, 263 (9th Cir.1966) (*"Larsen II"*), *aff'g* 252 F.Supp. 458 (W.D.Wash.1965) (*"Larsen I"*), which the court viewed as establishing a binding federal maritime rule. Suma timely appealed.

Suma contends that the district court erred by applying federal maritime law to conclude that the perishable cargo clause did not cover Suma's losses. The parties agree that federal admiralty law governs disputes arising from maritime insurance contracts when an established federal rule exists, *see Morrow Crane Co. v. Affiliated FM Ins. Co.*, 885 F.2d 612, 614 (9th Cir.1989); *see also Columbia Brick Works v. Royal Ins. Co. of Am.*, 768 F.2d 1066, 1071 (9th Cir.1985), and that state law will control disputes involving maritime insurance policies only "in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice," *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 510 (9th Cir.1984). The parties also agree that Suma's losses were caused by its carrier's failure to set the fresh air vents correctly on the refrigerated containers. Accordingly, the district court correctly determined that the dispositive issue was whether the carrier's neglect caused a "derangement" of the refrigeration equipment under the perishable cargo clause. Applying our holding in *Larsen*, the district court concluded that Suma's losses were not covered by the insurance policy.

> "All risks of physical loss or damage from any external cause but excluding:
> 1. Deterioration, decay, or spoilage unless the assured demonstrates that such damage is caused by derangement or breakdown of the refrigeration equipment, or the vessel stranding, sinking, burning, or being in collision...."

In *Larsen,* we affirmed a district court's decision that addressed a similar maritime dispute involving a nearly identical insurance policy term. *See Larsen II,* 362 F.2d at 262–63. We concluded in *Larsen* that the district court correctly determined that the term "derangement or breakdown of the refrigerating machinery" applied to a functional or mechanical disorder of the refrigeration equipment itself, as distinguished from human failure to operate the equipment at the appropriate capacity. *See id.* at 263; *see also Larsen I,* 252 F.Supp. at 474–75. Thus, following *Larsen,* we must hold that Suma's losses were not caused by a "derangement or breakdown of the refrigerating machinery" because human error caused the equipment to operate at an inappropriate capacity. *See Larsen II,* 362 F.2d at 263.

Despite our holding in *Larsen,* however, Suma contends that California law governs the instant case because *Larsen* does not constitute an established federal admiralty rule. Suma asserts that *Larsen* was decided under principles of Washington state law. Suma asks us to apply California state law principles which it assumes would be more favorable to its position. We need not decide that issue, however, because Suma is mistaken in its assertion that *Larsen* did not establish a federal admiralty rule. The decision of this court on the issue is not extensive, but approves the reasoning of the district court. *See id.* The district court's decision relied upon federal maritime statutes to interpret, among other things, the term "derangement" in marine insurance policies. *See Larsen I,* 252 F.Supp. at 466–67, 474–75. The district court pointed out that, under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(2)(a), the damage to cargo caused by the negligence of the Master and crew is not the responsibility of the vessel. *Id.* at 466. The court then reasoned that the machinery of the vessel "could not be said to have been deranged" if the damage was caused by the negligence of the Master. *Id.* at 474–75.

We hold that *Larsen* constitutes a judicially-fashioned admiralty rule that uniformly provides that the term "derangement or breakdown of the refrigerating machinery," as the term is used in marine insurance contracts, applies to losses caused by mechanical disorders of refrigeration equipment. *See Larsen II,* 362 F.2d at 263; *cf. Continental Food Prods., Inc. v. Insurance Co. of N. Am.,* 544 F.2d 834, 836 (5th Cir. 1977) (concluding that, under a similar maritime insurance policy, an insured's losses were not covered, absent proof of mechanical derangement or breakdown of the refrigeration equipment). Thus, the district court correctly applied the rule in *Larsen* to conclude that Suma's losses were not covered by the perishable cargo clause of the insurance policy. *See Columbia Brick Works, Inc.,* 768 F.2d at 1071; *Bohemia,* 725 F.2d at 509–10.

Of course, parties to a marine insurance contract may freely negotiate for specific coverage in a given insurance policy. *See Port of Portland v. Water Quality Ins. Syndicate,* 796 F.2d 1188, 1193–94 (9th Cir.1986); *Kalmbach, Inc. v. Insurance Co. of Pa.,* 529 F.2d 552, 556 (9th Cir.1976); *see also Travelers Ins. Co. v. Budget Rent–A–Car Sys., Inc.,* 901 F.2d 765, 768 (9th Cir.1990) ("Contracts enable parties to define their mutual rights and responsibilities."). Suma, therefore, could have contracted with Albany and expressly provided that the term "derangement of refrigeration equipment" insured against losses caused by both mechanical and human error. *See Frupac Int'l Corp. v. Fireman's Fund Ins. Co.,* No. 90–1537, 1990 WL 204380, at *7 (E.D.Pa. Dec.11, 1990). Because Suma's insurance contract with Albany contained no such provision, the rule in *Larsen* controls.

**AFFIRMED.**