COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,

v.

SEA HARVEST SEAFOOD COMPANY, Defendant.

No. Civ.A. 99–2007–KHV.

United States District Court, D. Kansas.

Nov. 2, 1999.

John M. Duggan, Deron A. Anliker, Duggan, Shadwick & Doerr, P.C., Kansas City, MO, Marilyn Raia, Jess B. Millikan, Derby, Cook, Quinby & Tweedt LLP, San Francisco, CA, for Plaintiff.

Kurt S. Brack, Holbrook, Heaven & Osborn, P.A., Merriam, KS, William G. Levi, Stacey A. Campbell, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff brings this action for declaratory relief under the Court's admiralty jurisdiction, 28 U.S.C. § 1333, alleging that it does not owe defendant's claim under a maritime insurance policy.    Defendant

counterclaims, invoking diversity jurisdiction under 28 U.S.C. § 1332. Defendant alleges breach of contract based on plaintiff's failure to pay the insurance claim, and tortious interference based on plaintiff's release of information regarding the cargo to the Food & Drug Administration (FDA). This matter comes before the Court on *Plaintiff's Motion For Summary Judgment* (Doc. # 54) filed August 13, 1999, and *Defendant's Motion For Partial Summary Judgment* (Doc. # 59) filed August 27, 1999. For the reasons set forth below, the Court sustains plaintiff's motion and overrules defendant's motion. Because the motions do not address the tortious interference claim, that claim remains for trial.

## Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

In considering a summary motion the Court must view the evidence in the light most favorable to the nonmoving party. *Tom v. First Am. Credit Union,* 151 F.3d 1289, 1291 (10th Cir.1998). Summary judgment may be granted, however, if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. Thus, " '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## Facts

The following facts are undisputed, or where disputed, are set forth alternately in the light most favorable to each party.

Plaintiff Commercial Union Insurance Company (Commercial Union) issued a marine cargo insurance policy to defendant Sea Harvest Seafood Company (Sea Harvest). The policy provided that "effective from inception it is hereby agreed that shipments of frozen shrimp shall be insured per the attached refrigeration clause." *Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* (Doc. # 60) filed August 27, 1999, Ex. 2. The refrigeration insurance endorsement provided:

"Perishable Cargo requiring temperature control is insured against:

All risks of physical loss or damage from any external cause but excluding:

A. Deterioration, decay or spoilage unless the assured can demonstrate that such damage was directly caused by derangement or breakdown of the refrigeration machinery or directly caused by the vessel stranding, sinking, burning or in collision.

*Id.*

On October 30, 1998, Sea Harvest declared a shipment of 3,600 cartons of frozen cooked shrimp. Sea Harvest contract-

ed with Sea–Land Service Inc. (Sea–Land) to transport the shrimp from Bangkok, Thailand to Philadelphia, Pennsylvania. Sea–Land agreed to maintain the shrimp at −4 degrees Fahrenheit in the cargo container during shipment. On November 2, 1998 the shrimp shipment arrived in California and was sent to Chicago via Union Pacific Rail. It arrived in Chicago on November 16, 1998, and was transferred to the CSX terminal. During the transfer, Sea–Land failed to attach a "genset" to the cargo container. A gen-set provides electrical power to the refrigeration unit on the cargo container. After the shrimp left Chicago en route to Philadelphia, Sea–Land notified Sea Harvest that the container did not have a gen-set attached when it left Chicago.

On November 18, 1998, Sea Harvest filed a claim with Commercial Union for the value of the shrimp shipment, under the insurance policy. The next day, Commercial Union acknowledged receipt of the claim. After the shrimp shipment arrived in Philadelphia, Scott Esslinger of Luard & Company inspected the shrimp. He estimate that the shrimp had been without refrigeration for two and one half days. His report stated as follows:

> In the single carton opened for examination of the contents (taken from the top tier of the rear row) we noted no apparent heavy ice or frost inside the plastic bags. Individual shrimp had well defined ridges. They appeared to be fairly evenly distributed throughout the bags, and did not appear to be frozen together in large clumps at the bottom of the bags, as we might expect had they thawed out and been refrozen.

*Memorandum in Support of Plaintiff's Motion For Summary Judgment*, Index 4,

Ex. A. When Esslinger examined the container, the temperature measured between 1.5 degrees Fahrenheit and minus 4 degrees Fahrenheit.

Two laboratories tested portions of the shrimp shipment and found some decomposition in the shrimp samples. Under FDA guidelines, and decomposition of frozen shrimp is unacceptable and renders the shrimp unfit for human consumption.

On January 7, 1999, Commercial Union denied the Sea Harvest claim, except for a claim of seven short cartons.[1] On January 8, 1999, Commercial Union filed this action for declaratory judgment. Plaintiff alleged that it denied the claim for two reasons: (1) Sea Harvest did not establish that the shipment was in good condition when the coverage attached as required by the policy; and (2) the policy excluded coverage of the claim.

In the policy, Sea Harvest warranted that "the interest insured hereunder is in good condition at the commencement of the coverage." *Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 60) filed August 27, 1999, Ex. 2. Sea Harvest cites evidence that Commercial Union did not request it to provide proof that the insured interest was in good condition at the commencement of coverage. Commercial Union points to evidence that it informed Sea Harvest that it was required to demonstrate a loss under the policy. Commercial Union did not conduct any independent investigation to determine whether the shrimp was in good condition when coverage attached.

Shin Kuo Lee, president of Sea Harvest, stated in an affidavit that Sea Harvest gave Commercial Union quality control

---

1. Commercial Union tendered Sea Harvest a check for $446.61 to cover the value of seven short cartons. The check included a restrictive endorsement. Sea Harvest interpreted the restrictive endorsement as a waiver of all claims by Sea Harvest, and did not endorse the check. Commercial Union asserts that the endorsement only applied to the claim for the shortage of seven cartons. Commercial Union has offered to reissue the check, clarifying that it is for full and final payment on only the shortage claim.

certification from its supplier. *Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* (Doc. # 60) filed August 27, 1999, Ex. 1, ¶ 31. Commercial Union denies that Sea Harvest provided such certifications, and it provides an affidavit of its regional claims manager, stating that she did not see the certifications until August 11, 1999, at her deposition.

Cooked, frozen shrimp must be stored at or below zero degrees Fahrenheit to prevent decomposition. Sea Harvest claims that the shrimp shipment is a total loss due to a temperature variance while it was in transit from Chicago to Philadelphia and because the United States has seized the shipment and commenced an action to condemn the shipment because of decomposition.

Sea Harvest made demand on plaintiff on January 6, 1999. Commercial Union has not paid the claim, which amounts to $230,005.79.

## ANALYSIS

Commercial Union asserts that it is entitled to summary judgment on its admiralty complaint for declaratory relief because as a matter of law, the policy does not provide coverage for the loss which Sea Harvest claims. Sea Harvest asserts that it is entitled to summary judgment on Count I of its counterclaim, because as a matter of law, the policy covered its loss. Resolution of this issue turns on construction of the marine cargo insurance policy.

Commercial Union asserts two reasons why the claimed Sea Harvest loss is not covered under the policy: First, the policy requires Sea Harvest to prove coverage, including evidence that the shipment sustained damage during transit. Second, the policy expressly excludes coverage for deterioration, decay or spoilage "unless the Assured can demonstrate that such damage was directly caused by derangement or breakdown of the refrigeration machinery [or other conditions not relevant here]." *Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* (Doc. # 60) filed August 27, 1999, Ex. 2. Commercial Union contends that as a matter of law, Sea–Lands's failure to attach a gen-set does not constitute a derangement or breakdown of the refrigeration machinery, and that the policy therefore excludes coverage. Because the Court finds under admiralty law that this second reason precludes coverage it does not address Commercial Union's other argument for denial of coverage.

The policy provides in pertinent part:

Perishable Cargo requiring temperature control is insured against:

All risks of physical loss or damage from any external cause but excluding:

> A. Deterioration, decay or spoilage unless the Assured can demonstrate that such damage was directly caused by derangement or breakdown of the refrigeration machinery ...

*Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* (Doc. # 60) filed August 27, 1999, Ex. 2. Under this provision, if the insured shows physical loss or damage due to external causes, the loss is covered unless the exclusion applies.

Commercial Union asserts that the exclusion applies. First, it argues that the loss is from "deterioration, decay or spoilage." Sea Harvest contends that the loss is from thawing, and not from "deterioration, decay or spoilage," but Sea Harvest also characterizes the loss as "decomposition." The policy does not define the terms "deterioration, decay or spoilage." Sea Harvest asserts that under Kansas law, the Court must interpret coverage clauses broadly and exclusion clauses narrowly, and thus must find that the terms

"deterioration, decay or spoilage," do not include "decomposition." See *United States Fidelity & Guar. Co. v. Hokanson,* 2 Kan.App.2d 580, 582, 584 P.2d 1264, 1266 (1978).

■ Sea Harvest assumes without analysis that Kansas law applies to this case. Unfortunately, the parties' briefs are less than helpful on this issue.[2] Federal admiralty law governs disputes arising from maritime insurance contracts. In the absence of a controlling federal admiralty law principle on a particular issue, however, courts generally apply the applicable state law rule. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Morrow Crane Co. v. Affiliated FM Ins. Co.,* 885 F.2d 612, 614 (9th Cir.1989); 2 Thomas J. Schoenbaum, *Admiralty And Maritime Law* (2d ed.) at 407–410.

■ The initial choice of law inquiry is whether admiralty law has an established rule. *See Continental Oil Co. v. Bonanza Corp.,* 677 F.2d 455, 461 (5th.Cir.1982). In the absence of a federal rule, state law controls disputes concerning maritime insurance policies unless a need exists for uniformity in admiralty practice. *See Bohemia Inc. v. Home Ins. Co.,* 725 F.2d 506, 510 (9th Cir.1984). There is a presumption against creating a federal rule where there is none, in favor of application of state law. *See Kamani v. Port of Houston Auth.,* 702 F.2d 612, 614 (5th Cir.1983). If state laws conflict, the court determines the choice of state law using the choice of law rules of the forum. *See* 2 Schoenbaum, *Admiralty And Maritime Law* at 410.

■ Rules for interpreting undefined terms of a policy differ under admiralty and state law. Under admiralty law, technical words ordinarily will be taken in the technical sense. *See Larsen v. Insurance Co. of North Am.,* 252 F.Supp. 458, 467 (W.D.Wash.1965). Under Kansas law, where a policy does not define terms, courts construed terms as having their ordinary, plan meaning. *Kansas State Bank & Trust Co. v. Old Am. Ins. Co.,* 491 F.2d 307, 309–10 (10th Cir.1974).

■ In construing the terms "deterioration, decay or spoilage," however, the Court reaches the same conclusion regardless whether admiralty or state law is applied. If the terms "deterioration, decay or spoilage" are viewed as technical terms the admiralty cases support a finding that these terms encompass the same concept as "decomposition." *See, e.g., British West Indies Produce, Inc. v. S/S Atlantic Clipper,* 353 F.Supp. 548 (S.D.N.Y.1973) (in interpreting marine insurance policy to determine coverage for rotten yams, using terms rot, decomposition and deterioration as part of one process); *Goya Foods v. S.S. Italica,* 561 F.Supp. 1077 (S.D.N.Y. 1983) (in interpreting admiralty insurance policy, using interchangeably the terms decomposition, deteriorate, spoilage and decay). Alternatively, if the Court construes these terms under Kansas law, the plain meaning of "deterioration, decay or spoilage" includes "decomposition." *See Webster's Third International Dictionary Of The English Language (Unabridged)* (1993) (defining "decay" as "to undergo decomposition"); *id.* (defining "spoil" as "to cause to decay or perish"); *id.* (defining deteriorate as "to become impaired in quality, state, or condition"); *see also Melrose Intern. Trading Co. of Canada, Ltd., v. Cudahy, Inc.,* 482 F.Supp. 1369 (E.D.Wis.1980) (using terms "decomposi-

---

2. Commercial Union devotes a seven line footnote to the question, *see Plaintiff's Memorandum In Opposition To Defendant's Motion For Partial Summary Judgment* (Doc. # 64) filed September 20, 1999, at p. 12–13, and refers to the need for uniformity in interpreting marine open cargo policies. *See Memo In Support Of Plaintiff's Motion For Summary Judgment* (Doc. # 58) filed August 13, 1999. Sea Harvest does not mention the choice of law issue.

tion" and "spoilage" interchangeably in analyzing whether spoiling of pork livers was caused by thawing and subsequent refreezing). The Court finds as a matter of law that the harm alleged by Sea Harvest—"decomposition" of shrimp—falls under the exclusion for "deterioration, decay or spoilage." The loss thus is covered only if Sea Harvest shows that this damage was "directly caused by derangement or breakdown of the refrigeration machinery." *Memorandum In Support Of Defendant's Motion For Partial Summary Judgment* (Doc. # 60) filed August 27, 1999, Ex. 2. Sea Harvest asserts that Sea–Land's failure to attach the gen-set in Chicago constitutes a derangement or breakdown of the refrigeration machinery. Commercial Union cites two Ninth Circuit cases to the contrary.

In *Larsen v. Insurance Co. of North America,* 362 F.2d 261 (9th Cir.1966), the Ninth Circuit construed a marine insurance policy which included the following clause:

> Whilst stowed in Refrigeration Chamber of vessel named herein this insurance is extended to cover all loss or damage due to or caused by derangement or breakdown of the refrigerating machinery and/or refrigerating plant and/or insulation.

362 F.2d 261. In *Larsen* the crew was allegedly negligent in its care and refrigeration of 21 barrels of salmon, 11 of which "soured." The insured contended that the loss fell within the exception for derangement of refrigeration. The Ninth Circuit upheld the district court's determination that in order to be deranged, "machinery must have some functional disorder in its own operation as distinguished from a sim-

ple failure to operate at all, or an operation at an improper or insufficient rate of production or operation due solely to the manner in which human beings in charge of the same choose to operate or not to operate it." 362 F.2d at 263.

In *Suma Fruit Intern. v. Albany Ins. Co.,* 122 F.3d 34 (9th Cir.1997), the Ninth Circuit addressed a similar dispute involving nearly the same policy term.[3] In *Suma,* a shipment of onions decayed when the carrier failed to correctly set the fresh air vents on the refrigeration units of the storage containers. The insured filed a claim for loss of the onions. The insurance company denied the claim because it asserted that failure to set the vents correctly did not constitute a "derangement" of the refrigeration equipment. The district court found for the insurer, under *Larson,* which it found had established a binding federal maritime rule.

The Ninth Circuit in *Suma* specifically held that "*Larsen* constitutes a judicially-fashioned admiralty rule that uniformly provides that the term 'derangement or breakdown of the refrigerating machinery,' as the term is used in marine insurance contracts, applies to losses caused by mechanical disorders of refrigeration equipment." 122 F.3d at 36. Thus the Ninth Circuit found that the district court had correctly applied the rule in *Larsen* to conclude that the losses were not covered by the perishable cargo clause of the insurance policy. The *Suma* court noted that the insured could have contracted with the insurance company to provide that the term "derangement of refrigeration equipment" insured against losses caused by both mechanical and *human error.*

▆ The Court adopts the reasoning in *Suma,* and finds that under established

---

**3.** In *Suma,* the perishable cargo clause insured against:
> All risks of physical loss or damage from any external cause but excluding:
> I. deterioration, decay, or spoilage unless the assured demonstrates that such damage

is caused by derangement or breakdown of the refrigeration equipment, or the vessel stranding, sinking, burning, or being in collision.
122 F.3d at 35.

admiralty law the the term " 'derangement or breakdown of the refrigerating machinery,' as the term is used in marine insurance contracts, applies to losses caused by mechanical disorders of refrigeration equipment." 122 F.3d at 36. In this case, it is undisputed that the refrigeration equipment did not suffer from mechanical disorders, but from human error in failing to hook up the gen-set, which caused the refrigeration equipment not to function. Commercial Union is entitled to summary judgment on its claim that it is not required to pay the claim of Sea Harvest for loss of the frozen shrimp.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion For Summary Judgment* (Doc. # 54) filed August 13, 1999, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that *Defendant's Motion For Partial Summary Judgment* (Doc. # 59) filed August 27, 1999, be and hereby is **OVERRULED.**

Defendant's claim for tortious interference set forth in Count II of its counterclaim remains for trial.