**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GALILEA, LLC,

*Plaintiff-Appellant/ Cross-Appellee*,

v.

AGCS MARINE INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; TORUS NATIONAL INSURANCE COMPANY,

*Defendants-Appellees/ Cross-Appellants.*

Nos. 16-35474
16-35475

D.C. No.
1:15-cv-00084-SPW

OPINION

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted July 13, 2017
Portland, Oregon

Filed January 16, 2018

Before: Marsha S. Berzon, Paul J. Watford,
and John B. Owens, Circuit Judges.

Opinion by Judge Berzon

# SUMMARY[*]

### Arbitration / Maritime Law

The panel affirmed in part and reversed in part the district court's orders finding enforceable an arbitration clause in a marine insurance policy and compelling arbitration of two claims but not others brought against insurance underwriters that denied coverage for the loss of a sailing yacht.

The panel held that the plaintiff's insurance application was not a contract, but the insurance policy was a contract subject to the Federal Arbitration Act. The policy's arbitration clause concerned a maritime transaction falling under the FAA, and Montana law was inapplicable under both federal maritime law choice-of-law principles and the policy itself and therefore did not render the arbitration clause unenforceable. The panel held that the arbitration agreement showed a clear and unmistakable intent to resolve arbitrability questions in arbitration. The panel thus affirmed the district court's order finding the policy's arbitration clause enforceable, affirmed the district court's order granting the defendants' motion to compel arbitration as to certain causes of action, reversed the district court's order denying the defendants' motion to compel arbitration as to the plaintiff's remaining causes of action, and remanded to the district court with instructions to grant the defendants' motion to compel arbitration in its entirety.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Joseph Gleason (argued), Gleason Law LLC, Atlanta, Georgia; Ross D. Tillman, Boone Karlberg P.C., Missoula, Montana; for Plaintiff-Appellant/Cross-Appellee.

Brian P. R. Eisenhower (argued) and Gerard W. White, Hill Rivkins LLP, New York, New York, for Defendants-Appellees/Cross-Appellants.

**OPINION**

BERZON, Circuit Judge:

"The sea, although an agreeable, is a dangerous companion," wrote Plato more than two millennia ago. Our case is about that danger; it concerns "a brave vessel . . . [d]ash'd all to pieces," like the ship Prospero hexed in *The Tempest*. William Shakespeare, *The Tempest* act 1, sc. 2.

Although the background has its drama, the primary legal issues are more mundane: Is an arbitration provision in a maritime insurance policy enforceable despite law in the forum state assertedly precluding its application? In addressing this question, we consider several questions concerning the intersection of the McCarran-Ferguson Act, 15 U.S.C. § 1012, which shields state insurance laws from federal preemption, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16, which provides for enforcement of arbitration provisions in maritime contracts. After doing so, we conclude that the arbitration clause should be given effect.

## I. BACKGROUND

### A. Contracting for Yacht Insurance

Montana residents Taunia and Chris Kittler are the sole members of Galilea, LLC ("Galilea"), a Nevada limited liability company. In 2014, Galilea purchased a sixty-foot yacht ("the Yacht"). This case concerns the scope of the insurance coverage Galilea bought for the Yacht.

About a year after purchasing the Yacht, the Kittlers submitted to Pantaenius America Ltd. ("Pantaenius") an online request for an insurance quote. Pantaenius specializes in obtaining and administering yacht insurance policies, acting as an agent for insurance underwriters. Following the quote request, the Kittlers electronically exchanged several documents with Pantaenius. According to Galilea, the Kittlers also spoke with a Pantaenius representative over the phone to discuss the materials needed to complete an insurance application. The Kittlers say they informed the Pantaenius representative on one call that it would be difficult to submit a hand-signed application because the Kittlers were, at the time, sailing the yacht in the Caribbean, en route from Florida to San Diego via the Panama Canal. Pantaenius nonetheless required a hand-signed application, so the Kittlers docked in Puerto Rico to locate the necessary equipment to print and scan a signed application.

The application for insurance listed three different underwriters: AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Torus National Insurance Company (collectively, "Underwriters"). The application

noted that one or more of these Underwriters would "be assigned at the time of binding [insurance] coverage."[1]

The application also included arbitration and choice-of-law terms. The arbitration term provided, in relevant part:

> Any dispute arising out of or relating to the relationship between Pantaenius America Ltd and/or our participating underwriters and the insured shall be settled by arbitration administered by the American Arbitration Association ["AAA"] in accordance with its Commercial Arbitration Rules. . . . The dispute shall be submitted to one arbitrator. . . . The place of arbitration shall be New York, New York.

The application also provided that the "relationship" and the Agreement "shall be governed by the laws of New York."

A day after Galilea submitted the signed application, Pantaenius issued an insurance binder providing preliminary coverage for up to two weeks from the date of application.[2] The binder set a coverage limit of $1,566,500, based on the "total agreed fixed value" of the Yacht; established a covered "Cruising Area" that extended south to 30.5 degrees north latitude; named the three Underwriters as the issuing insurance companies; incorporated the forthcoming policy's

---

[1] All three companies are appellees and cross-appellants here.

[2] An insurance binder provides preliminary, temporary coverage, often reflecting the terms of a forthcoming formal insurance policy should one be issued. *See* 16 Williston on Contracts § 49:53 (4th ed. 2017).

terms and conditions; and attached a document with those anticipated terms.

The formal insurance policy issued a day later. Pantaenius formally signed the insurance policy on behalf of the three Underwriters. The policy provided that it would be "effective only when the insured vessel(s) are within the 'cruising area' specified."

The choice-of-law and forum selection provisions in the policy's terms and conditions were different from those in the application. Both the policy and the application called for arbitration in New York pursuant to AAA rules. But the scope of the choice-of-law provision and arbitration clause differed. The policy provided:

> This insurance policy shall be governed by and construed in accordance with well established and entrenched principles and precedents of substantive United States Federal Maritime Law, but where no such established and entrenched principles and precedents exist, the policy shall be governed and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflict of laws principles, and the parties hereto agree that any and all disputes arising under this policy shall be resolved exclusively by binding arbitration to take place within New York County, in the State of New York, and to be conducted pursuant to the Rules of the American Arbitration Association.

The policy thus differed from the application by (i) identifying federal maritime law and, to fill its gaps, New York law, as the choice of law applicable to the policy, and (ii) including different language concerning the scope of arbitrable disputes—"any and all disputes arising under this policy," not "any dispute arising out of or relating to the relationship."

## B.  The Parties' Dispute and Procedural History

The Yacht ran ashore near Colón, Panama about a month after the insurance policy issued.  Galilea submitted a claim for insurance coverage, but the Underwriters refused to pay it.  Pantaenius explained that the Yacht had traveled south of the cruising area set forth in both the application and the policy.  Galilea rejoined that the application and policy do not reflect the parties' actual agreement, and that Pantaenius and the Underwriters misrepresented the scope of the written policy.

After Galilea requested reconsideration of the coverage denial, the Underwriters initiated arbitration proceedings in New York.  Galilea submitted objections and counterclaims in the arbitration proceedings, but also filed a separate action in federal court in the District of Montana, along with a motion to stay the arbitration proceedings.

In its Montana complaint, Galilea asserted twelve causes of action, all of which substantially overlapped with its arbitration counterclaims.  The Underwriters responded with a motion to dismiss for failure to state a claim and a motion to compel arbitration.  Separately, in federal court in the Southern District of New York, the Underwriters filed a petition to compel arbitration.

The Montana district court issued two orders from which the parties have lodged certified interlocutory cross-appeals. *See* 28 U.S.C. § 1292(b). In those orders, the court held: (1) the arbitration provision in Galilea's original insurance application was not relevant, because it was not included in the Underwriters' demand for arbitration; (2) claims arising under the insurance policy come within admiralty jurisdiction, and under relevant choice-of-law principles, federal maritime law governs the contract; (3) the FAA applies and requires enforcing the policy's arbitration provision; (4) questions relating to the enforceability and scope of the arbitration provision are properly determined by the court, not an arbitrator; and (5) the scope of the policy's arbitration clause did not extend to cover ten of Galilea's twelve claims. The district court thus granted the Underwriters' motion to compel arbitration as to two of Galilea's claims but denied it as to the others.

## II. DISCUSSION

This case ultimately presents "gateway" arbitrability questions: whether a valid and enforceable agreement to arbitrate exists, and, if so, whether particular claims fall within the scope of the arbitration provision. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). But, before we reach those questions, we must decide whether there is an agreement to which the federal law of arbitrability could apply. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). We conclude the parties' insurance policy is the governing contract and falls within the Federal Arbitration Act's scope.

## A. The FAA Applies to the Insurance Policy but Not the Insurance Application

The FAA cannot compel a party "to arbitrate the threshold issue of the existence of an agreement to arbitrate" unless there is an overarching agreement to do so within the FAA's scope. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) (emphasis omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296–97 (2010). That is, "[a]lthough challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (internal citations omitted). Accordingly, we "must first make a threshold finding that the document [evidencing an agreement] at least purports to be . . . a contract." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 476 (9th Cir. 1991).

### 1. The Insurance Application Is Not a Contract

As noted, Galilea submitted a signed application for insurance to the Underwriters. Among other terms, the application included choice-of-law and forum selection clauses. *See* p. 5, *supra*. The Underwriters suggest the application's arbitration provision should govern this dispute under the FAA; Galilea maintains, to the contrary, that the application does not evidence mutual assent to a contract or to arbitration.

We agree with Galilea on this point. Under the law made applicable by the policy and application, the application was not a contract.

New York state law is made applicable under Galilea's insurance application, and also, if no established substantive principle or precedent of federal maritime law applies, under the insurance policy's choice-of-law provision. We have not uncovered any established federal maritime law rule on this issue, and so we proceed to the law of New York.

Under New York law, language from an application may be incorporated into an insurance policy only if the application was attached to the policy at the time of delivery. *See Smith v. Pruco Life Ins. Co. of N.J.*, 710 F.3d 476, 479–80 (2d Cir. 2013) (per curiam) (citing N.Y. Ins. Law § 3204(a)); *Cutler v. Hartford Life Ins. Co.*, 22 N.Y.2d 245, 250–52 (1968); *Berkshire Life Ins. Co. v. Weinig*, 290 N.Y. 6, 10 (1943); *see also* 16 Williston on Contracts at § 49:41 (4th ed. 2017); 2 Couch on Insurance § 18:6 (3d ed. 2017). The insurance policy "shall contain the entire contract between the parties," and no document may be incorporated by reference into the insurance contract unless a true copy is "endorsed upon or attached to the policy or contract when issued." *Smith*, 710 F.3d at 479–80 (quoting N.Y. Ins. Law § 3204(a)(1)).

Here, it does not appear that the application was attached to the policy when issued. Instead, some of the information provided in the application was reprinted in the policy, but the forum-selection and choice-of-law provisions were not incorporated. Even if attached to the policy, the application is not named in the policy as an incorporated document. Thus, because the application was not a contractual

agreement under New York law, the federal law of arbitrability cannot apply to its arbitration clause.**[3]**

## 2. The Insurance Policy Is a Contract Subject to the FAA

We now turn to whether the policy is subject to the FAA. Policies that insure maritime interests against maritime risks are contracts subject to admiralty jurisdiction and to federal maritime law. *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1025 (9th Cir. 2001). The insurance policy here is a maritime insurance contract and so would seem to be subject to federal maritime law.

Galilea asserts to the contrary—that under federal maritime law, the FAA does *not* apply to this contract, because Montana public policy overrides its arbitration provision and Montana law, preserved from federal preemption by the federal McCarran-Ferguson Act, precludes the FAA's application. We disagree, and hold that the FAA does apply.

### a. *The Federal Arbitration Act Constitutes Established Federal Maritime Law for "Maritime Transactions"*

The Supreme Court long ago established that where an "insurance policy . . . is a maritime contract the Admiralty Clause of the Constitution brings it within federal jurisdiction." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955). At the same time, *Wilburn Boat*

---

**[3]** We do not consider the extent to which other representations made in the application are incorporated into the policy or may otherwise be considered when interpreting or enforcing the policy.

instructed, "it does not follow . . . that every term in every maritime contract can only be controlled by some federally defined admiralty rule." *Id.* Rather, held *Wilburn Boat*, as insurance is traditionally an area of state regulation, federal maritime law leaves room for state insurance regulation if there is no established federal maritime law rule or need for federal uniformity. *Id.* at 316, 321; *see also id.* at 323–24 (Frankfurter, J., concurring in the judgment).

After *Wilburn Boat*, "the initial inquiry of the courts in interpreting a policy of marine insurance [is] to determine whether there is an established federal maritime law rule." *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 649–50 (9th Cir. 2008) (quoting Thomas J. Schoenbaum, Admiralty and Maritime Law § 17–6 (4th ed. 2004)) (internal quotation marks omitted). If so, "federal admiralty law [will] govern[]. . . ." *Suma Fruit Int'l v. Albany Ins. Co.*, 122 F.3d 34, 35 (9th Cir. 1997). "[S]tate law will control . . . only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." *Id.* (internal quotation marks omitted).

Here, there is an established federal maritime law rule concerning the enforcement of arbitration provisions in insurance policies, namely, the Federal Arbitration Act. The FAA specifically applies to "maritime transaction[s]." 9 U.S.C. § 2. "Maritime transactions" include, among other types of agreements, "agreements relating to . . . repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction." *Id.* § 1.[4]  The parties'

---

[4] "[C]ontracts of employment of seamen" are excepted from the FAA's coverage. 9 U.S.C. § 1.

insurance policy relates both to collisions and to repairs to the Yacht, and, as *Wilburn Boat* holds, 348 U.S. at 313, a dispute concerning a maritime insurance policy comes within federal admiralty jurisdiction.  As the parties' dispute falls within the scope of the FAA and the FAA includes an applicable, specific federal maritime law rule, under *Wilburn Boat*, Montana state law does not govern the validity of the agreement's arbitration provision.

### b.  *Federal Maritime Law Is Not Precluded by Montana Law under the McCarran-Ferguson Act*

Galilea first attempts to navigate around *Wilburn Boat* with the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, which precludes the application of federal statutes if (1) a state law is "enacted . . . for the purpose of regulating the business of insurance;" (2) the federal law does not "specifically relat[e] to the business of insurance;" and (3) the federal statute's application would "invalidate, impair, or supersede" state insurance law.  *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (internal quotation marks omitted). Galilea points to Montana's Uniform Arbitration Act, which renders unenforceable arbitration clauses in "insurance polices or annuity contracts except for those contracts between insurance companies,"  Mont. Code Ann. § 27-5-114(2)(c), and asserts that the McCarran-Ferguson Act requires that, notwithstanding *Wilburn Boat*, the Montana rule precluding arbitration of consumer insurance disputes applies here.  Galilea also cites to non-maritime insurance cases holding arbitration agreements unenforceable under state anti-arbitration laws saved by the McCarran-Ferguson Act.  *See Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006); *McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854, 855 (11th Cir. 2004) (per curiam); *Standard*

*Sec. Life Ins. Co. of N.Y. v. West*, 267 F.3d 821, 823–24 (8th Cir. 2001); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 931–32 (10th Cir. 1992).

This McCarran-Ferguson-based argument sails too far ahead too fast. Slowing down the analysis, it becomes apparent that there is no route for Montana law to apply as a competitor to the FAA here.

Under *Wilburn Boat*, Galilea's maritime insurance policy is within federal admiralty jurisdiction and governed by applicable maritime law if such law exists. Applying an established federal maritime law rule—such as the provision of the FAA directly mandating the enforcement of arbitration clauses in maritime transactions—thus does not "invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). Rather, given *Wilburn Boat* and its progeny, any applicable maritime law rule is primary, and state law applies only if maritime law does not. Given the interstitial, contingent nature of state law in this setting, state insurance law is not "invalidate[d], impair[ed], or supersede[d]," *id.*, by applying a maritime law rule when, as here, there is one.

Alternatively, one reaches the same conclusion if one applies established maritime choice-of-law principles to the insurance policy's choice-of-law provisions. The parties here agreed to a choice-of-law term in the insurance policy—federal maritime law and, as needed, New York law. "[W]here the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice," *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296–97 (9th Cir. 1997), absent, as relevant here, "a state which has a materially greater interest than the

chosen state . . . and which . . . would be the state of the applicable law in the absence of an effective choice of law," *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 917 (9th Cir. 2003) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1991)).

Montana does not have a materially greater interest than federal maritime (or New York) law. There is no question that Montana law has relatively little to do with this dispute. Galilea is a Nevada limited liability corporation, and the Insurers have principal places of business or are incorporated under the laws of Delaware, New Jersey, Illinois, and Massachusetts. Although Galilea's members are Montana residents, they were in Florida, Puerto Rico, and the Caribbean Sea at the time of contracting, and the insured property appears never to have been in Montana. Moreover, landlocked Montana has relatively weak interests in maritime insurance law, particularly as compared to coastal states with more developed maritime law, including New York.

But, again—there *is* a federal maritime law rule here applicable, the FAA. Under the FAA, the arbitration provision is enforceable. The McCarran-Ferguson Act thus has no pertinence, as no state's law is applicable in the first instance.

### c.  *Federal Maritime Law Is Not Precluded by Montana Law under* **The Bremen**

Galilea also argues that the policy's choice-of-law provision is unenforceable under *M/S Bremen v. Zapata Off-Shore Co.* (*The Bremen*), 407 U.S. 1 (1972). We are not persuaded.

*The Bremen* held that federal maritime law makes *forum* selection clauses presumptively enforceable. *Id.* at 13–14. At the same time, "[u]nder the directives of the Supreme Court in [*The*] *Bremen*, we will determine a forum selection clause is unenforceable 'if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (per curiam) (quoting *The Bremen*, 407 U.S. at 15) (emphasis omitted). Galilea points to the strong public policy of Montana against enforcement of arbitration agreements in the context of this dispute, and argues that enforcement of the policy's arbitration agreement would contravene the policy of the state in which Galilea brought suit.

There are two critical problems with Galilea's reliance on *The Bremen*. First, that case did not discuss federal maritime law rules about *choice-of-law clauses*, but rather about forum selection clauses. *See The Bremen*, 407 U.S. at 2, 17–19. By contrast, Galilea and the Underwriters agreed to a kind of forum selection provision—arbitration[5]—and also to a separate choice-of-law provision—federal maritime law, and where that law has gaps, New York law. And as we have already established, here there is no gap in federal maritime law to fill with law from *any* state, Montana included, as the FAA supplies the governing arbitration law for maritime transactions.

---

[5] In the context of international arbitration, the Supreme Court has noted, "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *see also Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 837 (9th Cir. 2010).

Second, and more foundationally, *The Bremen* considered whether the public policy of the forum where suit was brought—there, federal public policy as supplied by federal maritime law—outweighed the application of the law of other countries. *Id.* at 17–18. In other words, under the rule of *The Bremen* and its progeny, courts consider the application of the laws of otherwise equally situated fora in light of the "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985). But here we encounter an unequal, hierarchical relationship between federal maritime law and state law; again, "[s]tate law governs disputes arising under marine insurance contracts only 'in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice.'" *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir. 1998) (citations omitted).

It does not make sense to apply the federal maritime choice-of-forum rule of *The Bremen* to invalidate *another* established federal maritime rule specifically addressing the appropriate forum—here, arbitration—because of a conflict with a forum *state's* public policy. Within federal admiralty jurisdiction, conflicting state policy cannot override squarely applicable federal maritime law. Applying *The Bremen* in the way Galilea requests would distort the basic, gap-filling principles underlying federal maritime law's limited recognition of state insurance law. "[S]ince the effect of the application of [state] law here would be to invalidate the contract, this case can hardly be analogized to cases . . . where state law had the effect of supplementing the remedies available in admiralty for the vindication of maritime rights."

*Kossick v. United Fruit Co.*, 365 U.S. 731, 741–42 (1961) (citations omitted).[6] We thus conclude that Galilea's reliance on Montana law under *The Bremen* is misplaced.

For the foregoing reasons, Montana's law simply does not apply to the dispute here. So it cannot act, through *The Bremen* or any other avenue, to trump the FAA as an established federal maritime law rule.

## B.  The Parties Have Delegated Arbitrability Issues to an Arbitrator

We conclude by addressing whether arbitrability issues have been delegated to an arbitrator under the parties' agreement. Because the parties here are sophisticated, and because they incorporated AAA rules into their arbitration agreement, they have clearly and unmistakably indicated their intent to submit arbitrability questions to an arbitrator.

Under the FAA, "the usual presumption that exists in favor of the arbitrability of merits-based disputes is replaced by a presumption *against* the arbitrability of arbitrability." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 920 (9th Cir. 2011) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also BG Group PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206–07 (2014) (summarizing the presumptions that guide "'threshold'

---

[6] More generally, applying *The Bremen* in the manner Galilea requests—which could invalidate FAA-covered arbitration clauses, insurance-related or not, inconsistent with a state's public policy against arbitration—would not be compatible with the contemporary law of domestic arbitration, which ordinarily disallows giving force to state law rules that "single[] out arbitration agreements for disfavored treatment." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425 (2017).

questions about arbitration"). Because the question of who should decide arbitrability issues "is rather arcane," ambiguity on this question cuts in favor of deciding the parties did *not* delegate these questions to an arbitrator. *First Options*, 514 U.S. at 945 (citation omitted). Presuming otherwise "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* (citation omitted). Accordingly, the court maintains jurisdiction over these gateway arbitrability questions unless there is "'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

In *Brennan*, we decided that, at least in a contract between sophisticated parties, the "incorporation of the AAA rules [into an arbitration agreement] constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* That is because the American Arbitration Association's rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association Commercial Arbitration Rule 7; *accord* American Arbitration Association Consumer Arbitration Rule 14.[7]

Here, the policy's arbitration provision states, in relevant part, that "the parties hereto agree that any and all disputes

---

[7] Galilea contends that it is unclear which set of American Arbitration Association rules apply here. But the same result obtains as to arbitrability under either potentially applicable set of rules.

arising under this policy shall be resolved exclusively by binding arbitration . . . conducted pursuant to the Rules of the American Arbitration Association." This policy language is comparable to that in the provision in *Brennan*. *See* 796 F.3d at 1128 (quoting agreement that relevant disputes "'be settled by binding arbitration in accordance with the Rules of the American Arbitration Association'").

As in *Brennan* itself, we need not decide whether the *Brennan* rule applies when one or more party is unsophisticated. Both parties here are sophisticated with respect to contracting for insurance policies. The Underwriters are, obviously, sophisticated parties; they underwrite maritime insurance policies. But so are Galilea and the Kittlers. Although they are Montana residents, Taunia and Chris Kittler formed a limited liability company under Nevada law to own and maintain a yacht worth more than a million dollars. In addition, Chris Kittler owns and operates a financial services company, also incorporated under Nevada law. In light of Galilea's and the Underwriters' sophistication, the agreement to arbitrate according to AAA rules is sufficient to show clear and unmistakable intent to resolve arbitrability questions in arbitration, rather than federal court. The district court therefore erred by declining to send those questions to arbitration and instead construing the scope of the parties' arbitration agreement itself.

## III. CONCLUSION

The Underwriters' argument that the insurance application supplies an enforceable arbitration agreement fails. The parties' insurance *policy*'s arbitration clause concerns a maritime transaction falling under the FAA, and

Montana law is inapplicable under both federal maritime law choice-of-law principles and the policy itself, so it does not render the arbitration clause unenforceable. We further agree with the Underwriters that the arbitration agreement shows a clear and unmistakable intent to resolve arbitrability questions in arbitration. We thus affirm the district court's order finding the policy's arbitration clause enforceable, affirm the district court's order granting the Underwriters' motion to compel arbitration as to certain causes of action, reverse the district court's order denying the Underwriters' motion to compel arbitration as to Galilea's remaining causes of action, and remand to the district court with instructions to grant the Underwriters' motion to compel arbitration in its entirety.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**