**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 21-1562

————————

GREAT LAKES INSURANCE SE

v.

RAIDERS RETREAT REALTY CO., LLC,

Appellant

————————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-04466)
District Judge: Honorable Eduardo C. Robreno

————————

Argued on June 8, 2022

Before: CHAGARES, <u>Chief Judge</u>, AMBRO, and
FUENTES, <u>Circuit Judges</u>

(Opinion Filed: August 30, 2022)

Howard J. Bashman **[Argued]**
Law Offices of Howard J. Bashman
500 Office Center Drive, Suite 400
Fort Washington, PA 19034

Shawn M. Rodgers
Goldstein Law Partners
11 Church Road
Hatfield, PA 19440

Michael Yanoff
Goldstein Law Partners
610 Old York Road, Suite 340
Jenkintown, PA 19446
            Counsel for Appellant Raiders Retreat Realty
            Co., LLC


Michael I. Goldman **[Argued]**
Goldman & Hellman
233 Harvard Street, Suite 211
Brookline, MA 02446

George R. Zacharkow
Deasey, Mahoney & Valentini
1601 Market Street, Suite 3400
Philadelphia, PA 19103
            Counsel for Appellee Great Lakes Insurance SE

## OPINION

**AMBRO**, <u>Circuit Judge</u>

A yacht owned by Raiders Retreat Realty Co., LLC ran aground. Luckily (or so it believed), Raiders had insured the vessel with marine insurer Great Lakes Insurance SE ("GLI"). But after Raiders submitted a claim under its policy, GLI left it high and dry. The insurer's reason for denying coverage: the yacht's fire-extinguishing equipment had not been timely recertified or inspected notwithstanding that the vessel's damage was not caused by fire. GLI sued first, seeking in federal court a declaratory judgment that Raiders' alleged failure to recertify or inspect its fire-suppression equipment rendered the policy void from its inception.

Raiders responded with five counterclaims, including three extra-contractual counterclaims arising under Pennsylvania law for breach of fiduciary duty, insurance bad faith, and breach of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.* (the "Unfair Trade Practices Law"), respectively. Concluding the policy's choice-of-law provision mandated the application of New York law and thus precluded Raiders' Pennsylvania-law-based counterclaims, the District Court dismissed those claims. In so doing, the Court rejected Raiders' argument that applying New York law would contravene Pennsylvania public policy, thereby making the choice-of-law provision unenforceable under *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), which held that under federal admiralty law

3

a forum-selection provision is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought." The District Court held that *The Bremen* did not apply for the choice-of-law issue, such that it need not consider whether there is strong Pennsylvania public policy that precludes applying New York law. We think the answer may be otherwise.

## I. Background

Raiders, a Pennsylvania-based company, insured a yacht for up to $550,000 with GLI, a company headquartered in the United Kingdom. That yacht ran aground in June 2019, incurring at least $300,000 in damage. Raiders submitted a claim to GLI for loss of the vessel, but GLI rejected it, claiming that the yacht's fire-extinguishing equipment was not timely recertified or inspected contrary to Raiders' prior statements otherwise. Though the damage to the yacht was free of fire, GLI maintained Raiders misrepresented the vessel's fire-suppression system's operating ability, thus making the policy void from inception. The insurer then filed an action for declaratory judgment in the U.S. District Court for the Eastern District of Pennsylvania to determine whether the policy was indeed void.

As noted, Raiders contested GLI's allegations and brought five counterclaims. It alleged breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); breach of fiduciary duty (Count III); insurance bad faith, in violation of 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (Count IV); and violation of Pennsylvania's Unfair Trade Practices Law (Count V). Relying on the policy's choice-of-law provision, GLI moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to

4

Counts III through V, which sought relief available against insurance companies under Pennsylvania law (hence not based on the insurance contract and thereby referred to as extra-contractual claims), on the ground that New York law, which precludes these claims, governs.  The choice-of-law provision in the policy reads:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice[,] but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

App. at 113.  The District Court concluded that New York law governed and barred Raiders' Pennsylvania-law-based counterclaims, thereby dismissing Counts III through V.  The Court later denied Raiders' motion to reconsider its judgment.  Raiders now appeals.

## II. Standard of Review

We give a fresh, or plenary, review of the District Court's choice-of-law determination.  *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).  We likewise exercise plenary review of the Court's construction of a written contract, *see USX Corp.* v. *Prime Leasing Inc.*, 988 F.2d 433, 437 (3d Cir. 1993), and apply the same standard to its grant of a motion for judgment on the pleadings, "accept[ing] the nonmoving party's factual allegations as true and constru[ing] all allegations in the light most favorable to

5

that party," *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019).

## III.  Discussion

### A.  Our jurisdiction over this interlocutory appeal.

Because this case concerns a maritime insurance contract, it fell within the District Court's maritime jurisdiction.  28 U.S.C. § 1333(1); *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 260 (3d Cir. 2008).  Our jurisdiction over the appeal is less clear.  Though neither party contests it, before reaching the merits of this case we must first independently establish our authority to decide.  *In re Klaas*, 858 F.3d 820, 825 (3d Cir. 2017).  We have, under 28 U.S.C. § 1292(a)(3), jurisdiction over appeals from "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."  For interlocutory appeals in admiralty cases, our precedent makes this language "appl[y] to situations such as the dismissal of parties from the litigation, grants of summary judgment (even if not to all parties), and other cases where a claim has somehow been terminated."  *In re Complaint of PMD Enters., Inc.*, 301 F.3d 147, 149 (3d Cir. 2002).  In short, "the order appealed from must conclusively determine the merits of a claim or defense."  *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 921 (3d Cir. 1987).

In practice, we have allowed interlocutory appeals in admiralty cases where parties' claims against one of the defendants suffered dismissal for lack of subject matter jurisdiction, *see Jones & Laughlin Steel, Inc. v. Mon River*

6

*Towing, Inc.*, 772 F.2d 62, 64 n.1 (3d Cir. 1985); the grant of judgment on a counterclaim where the principal claim was undecided, *see In re Nautilus Motor Tanker Co.*, 85 F.3d 105, 110 n.3 (3d Cir. 1996); and even in an appeal from an order determining the rights and liabilities of some but not all parties, *see Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 945 n.1 (3d Cir. 1985).

On the other hand, we refused to allow an interlocutory appeal in admiralty where the trial court dismissed one claim on which forfeiture of a vessel was based but three other grounds for that remedy remained. *See United States v. The Lake George*, 224 F.2d 117, 118–19 (3d Cir. 1955). We likewise rejected an interlocutory appeal in admiralty where the District Court denied a plaintiff's motion for summary judgment on the defendant's counterclaim because "no right or liability of the parties ha[d] been 'conclusively determine[d].'" *PMD*, 301 F.3d at 151 (second alteration in original) (quoting *Kingstate Oil*, 815 F.2d at 921). We explained that "[h]ad the District Court denied [the defendant] the right to file the counterclaim or had it granted summary judgment to [the plaintiff] on [the defendant's] counterclaim, the rights and liabilities of the parties may well have been conclusively determined, in which case the District Court's decision would have been appealable." *Id.*

Because it foreclosed certain counterclaims, the District Court's decision to dismiss Raiders' extracontractual counterclaims is analogous to the hypothetical scenarios we outlined in *PMD*. As we explained, "the rights and liabilities of the parties may well have been conclusively determined" and so "would have been appealable." *Id.*

7

Applying that logic here warrants interlocutory review. Further, while Raiders still maintains two remaining counterclaims (Counts I and II), the Pennsylvania-law-based counterclaims dismissed by the District Court seek forms of relief unavailable under the surviving counts. *Cf. Lake George*, 224 F.2d at 118–19 (foreclosing appeal in admiralty where remaining claims sought same relief as dismissed claim). Moreover, "[i]n maritime cases, [a] choice-of-law . . . determination," such as the one before us, is deemed a "determination on the merits and may be treated as the equivalent of a motion for summary judgment." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 680 n.26 (5th Cir. 2003). For these reasons, we hold that the District Court's dismissal of Raiders' extracontractual counterclaims "determin[ed] the rights and liabilities of the parties" under § 1292(a)(3). Hence we have jurisdiction over this interlocutory appeal.

**B. The District Court should have considered whether applying New York substantive law would contravene Pennsylvania's "strong public policy" under *The Bremen*.**

As our Court has summarized, the seminal maritime insurance decision in *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955), established that "maritime contracts are governed by federal admiralty law when there is an established federal rule, but absent such a rule, state law applies." *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009). One such established federal rule is that "[a] choice of law provision in a marine insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust." 2 Thomas J. Schoenbaum,

8

Admiralty and Maritime Law § 19:6 (6th ed. 2020); *see also Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242–44 (5th Cir. 2009) (determining whether enforcing identical choice-of-law section in maritime insurance policy "would be unreasonable or unjust"); *cf. Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 197 n.36 (3d Cir. 1995) (observing in dicta that choice-of-law provisions are "typically . . . enforced under federal maritime law").

Raiders, however, contends this presumption of enforceability should not control the choice of law here.[1] Citing *The Bremen*, it argues that enforcing the choice of law in the policy would be unreasonable and unjust, as applying New York law would contravene the strong public policy of Pennsylvania, which protects insureds in Pennsylvania from, among other things, bad faith and unfair trade practices by insurance companies.

*The Bremen* involved a dispute between an American and a German company about the enforceability of a forum-selection provision in a towing contract drawn up to facilitate

---

[1] Raiders also maintains the express language of the policy's choice-of-law provision does not mandate applying New York law to preclude its claims arising under Pennsylvania law. But as it failed to raise this argument in the District Court (or, for that matter, the more intriguing argument that the provision is ambiguous and therefore should be construed against GLI as the drafting party), Raiders has not properly preserved this argument for our review. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021) ("It is well-established that arguments raised for the first time on appeal are not properly preserved for appellate review.").

9

the transport of a drilling rig from Louisiana to the Adriatic Sea off the coast of Italy: "Any dispute arising must be treated before the London Court of Justice." 407 U.S. at 2. When a contractual dispute arose, the American company sued in a federal court. *Id*. at 3–4.

The U.S. Supreme Court ultimately held that the contract's forum selection was facially valid and should be honored unless a compelling and countervailing reason rendered enforcement unreasonable. *Id*. at 10, 15, 20. It explained that that forum-selection articles in maritime cases should be enforced absent a "strong showing" that "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Id.* at 15. It then provided examples of circumstances where enforcement of a choice-of-forum provision would be "unreasonable and unjust," including, among other things, situations where enforcement would "*contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision*." *Id.* (emphasis added). The choice of forum there was enforceable because there was "strong evidence that the forum clause was a vital part of the [parties'] agreement," *id.* at 14, and it was not "an agreement between two Americans to resolve their essentially local disputes in a remote alien forum," *id*. at 17.

Nearly twenty years later, in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588 (1991), the Supreme Court extended *The Bremen*'s framework to a dispute over which of two competing states was the proper forum for a tort action in admiralty. *Carnival* stemmed from a suit in Washington State filed by a cruise ship passenger who sustained injuries in international waters off the coast of Mexico. *Id*. The

10

passenger's ticket contained a forum-selection proviso that "all disputes and matters" be litigated in Florida courts. *Id*. at 587–88.

The Supreme Court analyzed the case under the framework laid out in *The Bremen* to evaluate the "reasonableness of the forum clause," "refin[ing]" the latter case's analysis "to account for the realities of form passage contracts." *Id*. at 593. It noted that "a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit." *Id*. And "[b]ecause a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora." *Id*. The Court further explained that "a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended." *Id*. at 593–94. Forum aside, "the fact that [the passenger's] accident occurred off the coast of Mexico" meant "this dispute [was not] an essentially local one inherently more suited to resolution in the State of Washington than in Florida." *Id*. at 594 (quotation marks omitted). In *Carnival*, therefore, the Supreme Court extended *The Bremen*'s framework to disputes over whether one state or another was the proper forum to bring suit under a forum-selection provision.

GLI argues *The Bremen* "is utterly irrelevant because it had absolutely nothing to do with the enforcement of choice of *law* clauses." Ans. Br. at 26 (emphasis added). We do not agree. Though the contract in *The Bremen* "did not specifically provide that the substantive law of England should be applied," the Court nonetheless "conclude[d] that the forum clause was also an effort to obtain certainty as to the applicable substantive

11

law," as "it is the general rule in English courts that the parties are assumed, absent contrary indication, to have designated the forum with the view that it should apply its own law." *The Bremen*, 407 U.S. at 13 n.15.

The U.S. Court of Appeals for the D.C. Circuit grasped this in *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 n.7 (D.C. Cir. 1992), by extending *The Bremen*'s framework to the choice of law in a cruise ticket: while "*The Bremen* involved a choice-of-forum clause, . . . the Supreme Court recognized that enforcing the provision would have the effect of subjecting the contract to foreign law." *Milanovich* concerned whether American or Italian law governed a cruise ship passenger's personal injury lawsuit where the contract contained a provision specifying the application of Italian law. *Id.* at 765–66. In resolving this question, the D.C. Circuit relied on *The Bremen* and *Carnival* to hold that

> courts should honor a contractual choice-of-law provision in a passenger ticket unless the party challenging the enforcement of the provision can establish that "enforcement would be unreasonable and unjust," "the clause was invalid for such reasons as fraud or overreaching," or "*enforcement would contravene a strong public policy of the forum in which suit is brought.*"

*Id.* at 768 (quoting *The Bremen*, 407 U.S. at 15) (emphasis added).

12

In the intervening decades, other circuits have relied on *Milanovich* when considering choice-of-law provisions in maritime contracts. *See Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) (upholding choice of law in cruise ticket over defendants' objections that Liberian law should apply); *Durham Auctions*, 585 F.3d at 243–45 (upholding identical choice-of-law provision where insured did not show applying New York law would contravene strong public policy of Mississippi). We are therefore persuaded that *The Bremen*'s framework is not "utterly irrelevant" in the context of choice-of-law provisions but rather applies equally to them as it does to those provisions selecting a forum.

GLI argues, however, that admiralty law is different: even if *The Bremen* does extend to choices of law in addition to forums, the framework it laid out does not apply here because, based on the Supreme Court's statement in *Wilburn Boat* discussed above, "there is a rule of federal admiralty law that choice of law clauses in policies of marine insurance are presumptively valid and enforceable." Ans. Br. at 29. Hence we "must apply that federal rule, no matter what." *Id*. at 21. This mirrors the District Court's opinion here, which held that the public policy of Pennsylvania could not overcome "the well-established principle that choice-of-law provisions in maritime contracts are presumptively valid." App. at 21.

In reaching its conclusion, the District Court also relied on the U.S. Court of Appeals for the Ninth Circuit's decision in *Galilea, LLC v. AGCS Marine Insurance Co.*, 879 F.3d 1052 (9th Cir. 2018). GLI likewise points to *Galilea* to argue *The Bremen* does not apply here. We disagree. *Galilea*, which does not bind our Court, involved a dispute over the scope of an insurance contract for a yacht owned by a Nevada company.

879 F.3d at 1054. The yacht's policy contained a forum-selection provision mandating arbitration in New York and a choice-of-law provision applying federal maritime law, but where no such established principles and precedents exist, New York law applied. *Id*. at 1055. The yacht's owner sued in federal court in Montana and argued the choice-of-law and choice-of-forum provisions were precluded by Montana law (which purportedly has a strong public policy against enforcement of arbitration agreements) under *The Bremen*. *Id*. at 1055, 1059–60.

The Ninth Circuit disagreed. It first explained that because the arbitration provision was enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "there [was] no gap in federal maritime law to fill with law from *any* state, Montana included, as the FAA supplies the governing arbitration law for maritime transactions." *Id.* at 1060 (emphasis in original). The Court then reasoned that "*The Bremen* considered whether the public policy of the forum where suit was brought—there, federal public policy as supplied by federal maritime law—outweighed the application of the law of other countries." *Id*. The *Galilea* dispute, in contrast, concerned an "unequal, hierarchical relationship between federal maritime law and state law." *Id*. Because "[w]ithin federal admiralty jurisdiction, conflicting state policy cannot override squarely applicable federal maritime law," the Ninth Circuit held that the insured's "reliance on Montana law under *The Bremen* [was] misplaced." *Id*. at 1060–61.

From this, the District Court here "conclude[d] that the public policy of a state where a case was filed cannot override the presumptive validity, under federal maritime choice-of-law principles, of a provision in a marine insurance contract where

14

the chosen forum has a substantial relationship to the parties or the transaction." App. at 21. "The issue is not," the Court explained, "whether New York law conflicts with Pennsylvania public policy." *Id*. Rather, it is "whether the well-established principle that choice-of-law provisions in maritime contracts are presumptively valid must yield to the public policy preferences of the particular state in which the case happens to have been brought." *Id*. In holding the answer is no, the Court's opinion (relying on *Galilea*) turned on the view that *The Bremen* and its progeny apply to one set of circumstances whereas there is a separate regime governing choice-of-law concerns in marine insurance contracts. *Id*. at 21–22.

But the principle of generally enforcing choice-of-law provisions in marine insurance contracts is *not* altogether separate from the choice-of-forum/choice-of-law regime set out in *The Bremen* and *Milanovich*. Indeed, the rule that choice-of-law provisions in maritime insurance contracts are presumed enforceable unless "enforcement would be unreasonable or unjust," Schoenbaum, *supra*, § 19:6, is identical to *The Bremen*'s rule that forum-selection provisions should be honored unless "enforcement would be unreasonable and unjust," 407 U.S. at 15. Given this overlap—coupled with *The Bremen*'s "strong public policy" exception comprising but one part of the holding's broader "unreasonable and unjust" standard—we consider it altogether reasonable that a "strong public policy of the forum [state] in which suit is brought" could, as to that policy specifically, render unenforceable the choice of state law in a marine insurance contract. *See id*.

Moreover, the District Court's confining of *The Bremen* and its progeny only to disputes between international fora and

15

U.S. law is belied by *Carnival* (uncited by the parties), in which the Supreme Court applied *The Bremen* to a dispute over whether Washington State or Florida was the proper forum to decide. Given the broad language in *The Bremen*, its oft-recognized applicability to choice-of-law provisions, *see e.g.*, *Milanovich*, 954 F.2d at 768, and the extension of its holding to a state-versus-state question in *Carnival*, we hold that *The Bremen*'s framework extends to the choice-of-law provision at issue here. Accordingly, the District Court needed to consider whether Pennsylvania has a strong public policy that would be thwarted by applying New York law. We thus vacate and remand for further proceedings consistent with this holding.